STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Richard L. DUGGER, Respondent.

No. 1911.

Supreme Court of Oklahoma.

July 16, 1963.

Rehearing Denied Oct. 8, 1963.

Edward E. Soule, Oklahoma City, for complainant.

John C. Moran, Morris Flynn, Oklahoma City, for respondent.

PER CURIAM.

The Oklahoma Bar Association filed a complaint dated February 13, 1961, against respondent Richard L. Dugger, containing three counts. We will consider the counts in order.

The first count charged that respondent advised Mr. and Mrs. Louis H. Severns to deed their farm to him without consideration and that he thereafter sold the farm and converted the money received from the sale to his own use. The respondent alleged that the property was deeded to him as payment of legal fees and expenses.

Without going into the details of the evidence submitted by the Bar Association and by the respondent, we find that much of the evidence by the parties was highly conflicting. Even the undisputed facts were equivocal in their ultimate meaning. That this is so may be demonstrated by the following. After hearings before Grievance Committee No. 7–A made up of three attorneys, two members of said committee made a majority report finding respondent not guilty as to the first count and recommending that it be dismissed. The third member of said committee made a minority report finding respondent guilty on the first count.

The Executive Council of the Bar Association, noting the lack of unanimity of the Grievance Committee, referred the matter to a review committee made up of three members of the Executive Council. The review committee was directed to make a report to the Executive Council after having made a complete study of the evidence presented.

The review committee on April 12, 1962, made its report to the Executive Council recommending that the Grievance Committee's majority report finding respondent not guilty on count one be adopted. On that date the Executive Council adopted the findings of the majority report that respondent was not guilty as to count one. The Executive Council also authorized and directed that such report and recommendation be filed in this Court.

The report and recommendation just mentioned were not filed in this Court and the matter came on for reconsideration before the Executive Council on July 20, 1962. No explanation is given by the Bar Association for this reconsideration. The Executive Council upon such reconsideration found the respondent guilty on the first count and directed that the new report and recommendation be filed in this Court. It was filed on August 24, 1962.

On August 28, 1958, Mrs. Zola Mae Severns shot and killed a neighbor by the name of Siler. She was arrested and charged with murder in Oklahoma County, Oklahoma. Later that case was dismissed

and she was charged with murder in Cleveland County. On this she was tried, found guilty and sentenced to life imprisonment in the State Penitentiary. Louis H. Severns was the husband of Zola Mae Severns.

The record does not appear to be clear on the matter but Louis H. Severns either alone or with his wife, owned Lots 6 and 7 and the East Half of the Southwest Quarter of Section 6, Township 10 North, Range 3 West in Cleveland County.

The respondent in this case was a lawyer who had been admitted to practice law in June, 1952, at the age of 29 years. He entered the active practice early in 1954. He was Assistant Municipal Counselor for Oklahoma City from March 1, 1955, to November 1, 1957. At all other times since he began to practice he was in the general practice of law. He had never represented any one in a homicide case and in fact had never defended any one in a felony case.

At the time of Zola Mae Severns' arrest the respondent had in his employ a young woman by the name of Donna L. Frazier who was engaged to marry the son of Louis H. Severns whose name was Jackie Joe Severns. It was through this relationship that the respondent and Louis H. Severns became acquainted. On the day of Zola Mae Severns' arrest Louis H. Severns hired the respondent to defend his wife with the understanding that he associate with him in the defense Jack Spivey, an attorney in Oklahoma City who was experienced in the practice of criminal law.

There is conflict in the testimony. The respondent as he alleged said he was deeded the farm by the Severns as his fee for defending Mrs. Severns. Mr. Severns, the secretary Donna Frazier and Jack Spivey testified that the fee to Spivey and respondent was to be $10,000.00 and that the farm was deeded to respondent to prevent the family of the murdered man from obtaining it in a tort action for the wrongful death of Siler and all proceeds from the sale of the farm, if sold, were to go to Louis H. Severns after paying attorney fees and expenses. The first move of respondent

after getting title in his name was to borrow $20,000.00 on this farm by giving a first mortgage. He obtained this from a man named Fariss only after Mr. Severns also gave a chattel mortgage on some Angus cattle that were on the farm and which he owned. After the payment of a previous mortgage on the farm and a mortgage on a piece of city property owned by Louis H. Severns and some other expenses there was $15,775.90 remaining out of which Spivey and the respondent were to be paid $5,000.00 apiece and all other expenses necessary to the defense of the case.

Later, on November 3, 1958, respondent put a second mortgage on the property for $5,000.00. He did not mention this fact to Mr. Severns. He testified that the farm was his property and he did not have to.

After Mrs. Severns' trial which lasted from February 23 to 25, 1959, Louis H. Severns and respondent agreed to sell the farm. It was sold for $56,000.00 on March 20, 1959. Soon thereafter respondent paid Severns $7,500.00. Severns said respondent told him it was a deposit put up to insure the purchase of the farm. The respondent testified that "I consider it to be an adjustment on the fee because I got more money out of the place than either he or I expected to get."

The respondent and his wife received $32,202.31 from the sale of the farm after the payment of the mortgages against it which totaled, $23,694.67 and to the American First Title and Trust Company, $64.60.

In September, 1959, Severns went to respondent and asked for $5,000.00. Respondent gave Severns a check for $5,000.00 but it was returned because of insufficient funds. Severns later collected approximately $4,750.00 of this $5,000.00.

The respondent gave Severns his personal note for $20,000.00 dated September 10, 1959, payable $5,000.00 a year for four years. The respondent claimed that the $20,000.00 was given Severns as an adjustment on the fee when it was decided to dismiss the appeal of Mrs. Severns' case.

Severns said that respondent told him that the purchaser of the farm wanted to borrow the $20,000.00 at six per cent interest and he did not need the money at the time and the farm purchaser was borrowing the money. Both versions are strange.

It appears that out of the $20,000.00 received out of the first mortgage, mortgages totaling $5,575.83 owed by Severns were paid. To Jack Spivey $5,000.00 was paid and to respondent there went $4,494.31. The balance went for expenses incurred in the defense of Mrs. Severns. Apparently the respondent took all the proceeds of the second mortgage of $5,000.00 known as the Nichols mortgage.. According to respondent's testimony he paid from the $56,000.00 the Fariss mortgage of $20,000.00 (It was paid down to $18,694.67). Also the Nichols mortgage of $5,000.00, the real estate commission of $2,800.00, closing cost of $240.00 and abstract fee of $20.00, which totaled $28,060.00. The respondent must have received $27,940.00 under his figures. Out of that he paid Louis H. Severns $7,500.00 and approximately $4,750.00.

 We are of the opinion after a study of the evidence in this case that the respondent's fee was to be $5,000.00 and that he took the title to the farm in his name in order to protect his fee and preserve as much for Louis H. Severns as possible. He was holding this land in trust for Severns and in case of sale he was to account to Severns for everything over and above the expenses of Mrs. Severns' defense, the attorney's fee to Jack Spivey and himself, which the two together totaled $10,000.00. Instead of doing this he paid Severns $12,250.00 and gave him his personal note for $20,000.00. We do not think this was an arm's length transaction but the respondent had the duty to assist the Severnses in this trying time in every reasonable and ethical way. This he did not do. We do not believe that respondent was to get this farm as his own property. Certainly the respondent's conduct in returning to Severns the $12,250.00 in cash and giving his note of $20,000.00 was a clear

indication that he did not think in his own mind that the land was conveyed to him as his fee.

We are of the opinion on complaint 1 respondent must be found guilty.

As to complaints 2 and 3 there is no serious question. Respondent delayed paying certain hospital and medical bills, the amount of which was held out when settling certain lawsuits with his clients. He eventually paid them. The reprimand fixed by the Executive Council is approved as to these two complaints.

The recommendation of the Executive Council of the Oklahoma Bar Association is approved.

HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.