2001 OK 54

**STATE OF OKLAHOMA ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Walter Blaine JENKINS, II, Respondent.**

**No. SCBD–4582.**

Supreme Court of Oklahoma.

June 26, 2001.

Mike Speegle, Assistant General Counsel of the Oklahoma Bar Association, Oklahoma City, OK, for the complainant.

Michael Paul Rogalin, Oklahoma City, OK, for Respondent.

LAVENDER, J.

¶ 1 In this disciplinary proceeding against Walter Blaine Jenkins, II, [Jenkins or respondent] the Court must decide (1) Whether the record [1] is sufficient for de novo review of

1. The record consists of a transcript of the Pro-  fessional Responsibility Tribunal's hearing and of

the complaint? and (2) Is the two-year-and-one-day suspension with imposition of costs an appropriate disciplinary sanction for respondent's acts of misconduct?

¶2 The Oklahoma Bar Association [Bar] charged Jenkins with five counts of professional misconduct. After a hearing, the Professional Responsibility Tribunal [PRT] accepted the *Agreed Stipulation of Fact and Conclusions of Law*. Based upon the same the PRT found that respondent had violated Rules 1.1, 1.2, 1.3, 1.4, 1.5 and 8.4(c), ORPC,[2] and recommended in accordance with Rule 1.3, RGDP,[3] that respondent be suspended from the practice of law for a period of two years and one day and that the costs of the proceedings be assessed against him.

## I

## FACTS ADMITTED BY STIPULATION

### COUNT I

¶3 In August 1994 Mrs. Ara Partridge retained Jenkins to investigate an incident occurring at the Boley Rodeo which she thought might involve civil rights violations. Later (in 1997) she hired him to represent her nephew and another person regarding an arrest which occurred at a later Boley Rodeo.

> the *Agreed Stipulation of Fact, Conclusions of Law and Recommendation for Discipline*, submitted by respondent and the Bar.

2. The pertinent terms of Rules 1.1, 1.2, 1.3, 1.4, 1.5 and 8.4(c), ORPC, 5 O.S.1991 Ch. 1, App. 3–A are as follows:

> "Rule 1.1 COMPETENCE
> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."
> "Rule 1.2 SCOPE OF REPRESENTATION
> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued."
> "Rule 1.3 DILIGENCE
> A lawyer shall act with reasonable diligence and promptness in representing a client."
> "Rule 1.4 COMMUNICATION
> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

She paid him $3000.00 as legal fees in both matters.

¶4 She repeatedly attempted to discuss the matters' status with the respondent to no avail. Jenkins had filed suit in the United States District Court for the Western District of Oklahoma on May 29, 1996 naming her as a plaintiff. In the complaint he alleged that Mrs. Partridge had been arrested. In fact she had never been arrested. The suit was dismissed on September 3, 1996. She did not discover the above until 1998.

¶5 In the second matter respondent failed to appear at a Department of Public Safety hearing and would not communicate with Mrs. Partridge. She fired him on January 13, 1998 and retained other counsel.

¶6 Mrs. Partridge later sued Jenkins in small claims court for return of the fees which she had advanced. She took judgment and respondent eventually refunded $2,250.00 to Mrs. Partridge.

### COUNT II

¶7 In August 1996 John Miller paid Jenkins a $1,000.00 retainer to represent him in prosecuting a discrimination claim against the city of Oklahoma City. In the following months Jenkins provided little or no informa-

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
> "Rule 1.5 FEES
> (a) A lawyer's fee shall be reasonable...."
> "Rule 8.4 MISCONDUCT
> It is professional misconduct for a lawyer to:
> (c) engage in conduct involving dishonesty; fraud, deceit or misrepresentation...."

3. The pertinent terms of Rule 1.3, RGDP, 5 O.S. 1991 Ch. 1, App. 1–A, are:

> "Rule 1.3 DISCIPLINE FOR ACTS CONTRARY TO PRESCRIBED STANDARDS OF CONDUCT
> The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

tion to his client but did tell him that everything was all right.

¶ 8 In response to a complaint filed by Miller on October 25, 1995 with the Equal Employment Opportunity Commission [EEOC], a Right-to-Sue letter was issued on August 21, 1996 and was received by respondent on August 26, 1996. The letter clearly gave 90 days from its receipt to bring suit. Jenkins filed Miller's suit in federal court 93 days later, i.e., three days out of time. The federal court dismissed the suit on May 29, 1997. Mr. Miller claims that by his own initiative he discovered in April 1999 that his suit had been dismissed almost two years earlier.

¶ 9 Bar received two complaints from Miller. In response to the later one Bar opened a formal investigation. In response to Bar's inquiry respondent represented that he had timely informed Miller that the suit had been dismissed and also stated that Miller's claim could be re-filed. After Miller reviewed Jenkins' response, he denied that respondent had informed him about the case's dismissal and further supplied Bar with a letter from an EEOC investigator which stated that a second Right to Sue letter could *not* be issued.

¶ 10 On June 23, 1999 Jenkins responded that he could re-file without the second EEOC letter and would do the same. On August 18, 1999 Bar received a letter from Miller in which he informed Bar that he had checked with the United States District Court Clerk's office on August 13, 1999 and no new lawsuit had been filed.

## COUNT III

¶ 11 In February 1999 Brenda Lee Cudjoe retained Jenkins to represent her and her son against the Edmond Public Schools. She paid him a $1,500.00 retainer. After writing a letter to the school board that same month respondent did nothing further for eight months. In October 1999 Mrs. Cudjoe informed Jenkins that she was terminating his representation. He requested another opportunity to file her suit and asked that she not terminate him. Thereafter, respondent refused to communicate with Mrs. Cudjoe.

¶ 12 Mrs. Cudjoe requested return of the fees she had paid. When the same was not forthcoming, she sued the respondent in small claims court and received a $3,724.00 default judgment.

## COUNT IV

¶ 13 In June 1999 Glenda Gay—a person then and now in a difficult financial position retained respondent to modify a divorce decree. She paid him a total of $500.00. Over the course of the next several months Jenkins informed Ms. Gay that she had a court date and then would tell her it had been cancelled or moved back. On November 17, 1999 Ms. Gay faxed him a termination letter.

¶ 14 In December 1999 respondent's secretary called Ms. Gay and informed her she had a court date on February 16, 2000. On that date respondent called and informed her the hearing had been re-set for March 8, 2000. When Ms. Gay went to court on that date, Jenkins did not appear. Several days later respondent called Ms. Gay and gave her a new court date of April 15, 2000. Ms. Gay timely appeared on that date and respondent—after a private conference with the judge—again informed her the matter had been re-set because the judge told respondent that he would have to reform the order because it was unclear what he was attempting to accomplish. This time the matter was set for April 26, 2000. Again, Ms. Gay timely appeared only to find that Jenkins had called two hours before the scheduled hearing time and struck the cause.

¶ 15 After several attempts Ms. Gay was able to get respondent to refund half of her money. He retained the balance. He had filed two pieces of paper in the matter and both of them were useless and of no effect.

## COUNT V

¶ 16 In 1996 Booker T. Thompson hired respondent and paid him $500.00 to investigate and file an action in a matter involving racial discrimination. After receiving the retainer respondent would not communicate with his client in spite of several efforts made by Mr. Thompson. This stalling continued for almost four years. Jenkins claims he told

Mr. Thompson that he had investigated the matter and that there was not enough evidence to sue under federal law. Respondent then informed Mr. Thompson he would investigate whether the claim could be brought in state court. Jenkins never filed a suit on Mr. Thompson's behalf and acknowledges that the statute of limitations on any claim which Mr. Thompson might have asserted has expired.

## AGREED CONCLUSIONS OF LAW

¶ 17 The parties' stipulation concedes that the respondent's conduct violates the mandatory provisions of Rules 1.1, 1.2, 1.3, 1.4, 1.5 and 8.4(c),[4] ORPC, and Rule 1.3, RGDP, and constitutes grounds for professional discipline.

## II

### STANDARD OF DETERMINATION IN BAR DISCIPLINARY PROCEEDING

■ ¶ 18 The Oklahoma Supreme Court has exclusive original jurisdiction over Bar disciplinary proceedings.[5] The standard of determination for these proceedings enunciated in *State ex rel. Oklahoma Bar Association v. Todd,* 833 P.2d 260 (Okla.1992) is applicable. There the court held:

> In attorney disciplinary proceedings this Court's determinations are made *de novo.* The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory. (citations omitted)

4. For the pertinent text of the noted rules, see *supra* note.

5. *State ex rel. Okla. Bar Ass'n v. Raskin,* 1982 OK 39, 642 P.2d 262, 265.

6. *State ex rel. Okla. Bar Ass'n v. Perceful,* 1990 OK 72, 796 P.2d 627, 630.

*Id.* at 262. Hence, the Court's responsibility is to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline that would avoid the vice of visiting disparate treatment on the respondent.[6] In a *de novo review* a full-scale exploration of all relevant facts is mandatory.[7] Neither the parties' stipulation nor the PRT's findings and recommendations are binding upon the Court.[8]

## III

### A TWO–YEAR–AND–ONE DAY SUSPENSION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PROFESSIONAL MISCONDUCT

■ ¶ 19 With a view to safeguarding the public, the court and the legal profession's interests the Court's duty is to inquire into a lawyer's continued fitness to practice law not to punish him/her. In this context the circumstances of a lawyer's alleged professional misconduct are important in searching for solutions that would accord with the law's imperative of protecting the public from substandard lawyers.

■ ¶ 20 Jenkins has been charged with (1) neglecting his clients by not expediting litigation consistently with their interests, (2) not keeping his clients informed, (3) charging unreasonable fees in light of the legal work he performed, and (4) misrepresenting facts to a federal court. It is a lawyer's mandatory obligation to act promptly and timely in pending matters and in communicating with a client.[9] Jenkins' professional conduct evinces a serious departure from these standards.

¶ 21 In mitigation of respondent's acts, he adduced evidence demonstrating that for the last four years he has suffered from depression and on two occasions sought medical intervention for the same. In October 2000

7. *State ex rel. Okla. Bar Ass'n v. Dugger,* 1963 OK 175, 385 P.2d 486 (syllabus) (Okla.1963)

8. *State ex rel. Oklahoma Bar Ass'n v. Downing,* 1990 OK 102, 804 P.2d 1120, 1123.

9. *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, 880 P.2d 339, 346.

Jenkins once again sought treatment for depression and has since that time remained under medical care. Respondent agrees to continue with counseling to address the life issues which face him.

¶ 22 The admitted facts reflected in the agreed stipulations when considered in light of the PRT's findings sufficiently evidence that respondent's conduct is below the standard of legal representation which is the public's due. We find that the five counts of the Bar's complaint are supported by clear and convincing proof. Accordingly, the PRT's recommendation that Jenkins be suspended from the practice of law for two years and one day is approved. Jenkins shall pay the costs incurred in these proceedings in the amount of $333.02.

¶ 23 Respondent stands suspended from the practice of law for two years and one day from the date this opinion becomes final. It is a precondition (among others) to his reinstatement that he pay the costs incident to this disciplinary prosecution.

¶ 24 HARGRAVE, C.J., HODGES, OPALA, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 25 WATT, V.C.J., dissenting.

¶ 1 I would disbar the respondent from the practice of law.