OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GRAYSON

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GRAYSON
2021 OK 58
Case Number: SCBD-7066
Decided: 11/16/2021
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 58, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
TYNAN DASHAREY GRAYSON, Respondent.

BAR DISCIPLINARY PROCEEDING

Â¶0 The complainant, Oklahoma Bar Association, charged the respondent, Tynan Dasharey Grayson, with seven counts of professional misconduct which involved neglecting multiple clients, failing to cooperate with the investigation, and one count of aggravation stemming from four prior counts of misconduct. The Professional Responsibility Tribunal recommended that the respondent be suspended from the practice of law for two years and a day and that costs be imposed. Upon de novo review we hold that the respondent's license to practice law is suspended for two years and a day. The respondent is assessed costs in the sum of $3,862.34 for payment not later than ninety days after this opinion becomes final.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, for Complainant.

Tynan Grayson, Edmond, Oklahoma, Pro Se.

KAUGER, J.:

Â¶1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Tynan Dasharey Grayson (respondent/Grayson), with seven counts of professional misconduct resulting from client neglect, neglect in responding to the Bar Association's investigation, and aggravation stemming from four prior counts of misconduct.[1] The Bar Association alleged that the attorney violated Rules 1.3 (diligence),[2] 1.4 (communication),[3] 1.5 (fees),[4] 1.15 (safe-keeping property),[5] and 8.4(a) of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A (violation of rules),[6] and Rules 1.3(discredit to profession),[7] and 5.2(misrepresentation during investigation)[8] of the Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A.

Â¶2 The Bar Association seeks for the respondent to be disciplined as the "Court finds equitable and proper," as well as the payment of costs.[9] Upon de novo review, we hold that the respondent's license to practice law should be suspended for two years and a day. The respondent is assessed the costs of this proceeding in the sum of $3,862.34 for payment not later than ninety days after this opinion becomes final.

FACTS

Â¶3 The respondent, Tynan Dasharey Grayson (Grayson/attorney) became a member of the Oklahoma Bar Association (Bar Association) on September 27, 2005. She is a solo practitioner at Grayson Law Group, PLLC. In 2014 and 2015 four grievances were filed against the attorney. They all involved lack of communication, improper deposit of client retainers, neglect of clients, and failure to respond to the Bar Association's inquiry into the grievances. On August 8, 2016, the attorney entered into a Diversion Program Agreement in which the Bar Association agreed to keep the grievances confidential, and the attorney agreed to participate and cooperate in the Bar Association's Diversion Program and be subject to a private reprimand upon completion of the program.[10]

Â¶4 On August 8, 2017, the Bar Association acknowledged that the attorney had satisfactorily completed the terms of her Diversion Agreement, and that pursuant to her contract, all costs had been waived. The attorney successfully completed classes in trust account school, communications, client neglect, and law practice management. On August 18, 2017, as required by the Diversion Agreement, the Professional Responsibility Tribunal (PRT) privately reprimanded Grayson as the result of the 2014-2015 grievances.

Â¶5 Then, from February of 2020 through March of 2021, Grayson's clients filed five additional grievances with the Bar Association. The five grievances, as alleged in the June 1, 2021, Complaint, are summarized as follows:

1. The Harris Grievance. LaTanya Harris retained Grayson in May of 2019 to assist with setting up a business plan and website, and later, to pursue a divorce action on her behalf. Harris paid $300.00 toward the attorney's $500.00 fee for design of the website, and $1200.00 towards the attorney's fee for setting up the business plan. Harris also paid $250.00 as partial payment for filing the divorce, and another $80.00 for court costs for the filing of a child support citation on Harris' behalf. The payments were not filed into a client trust account, the attorney failed to perform the work, and failed to communicate with the client. Harris filed a grievance on February 25, 2020, and was able to recover most of the funds she had paid the attorney in small claims court in August of 2020.

2. The Taylor Grievance. In January of 2019, D. Mariah Taylor hired Grayson to represent her in a divorce with minor children. Taylor paid the attorney $5860.00 which was not deposited in a client trust account. Respondent moved law offices and did not notify Taylor, and failed to account for and/or refund unearned and unreasonable fees for work she failed to perform.

3. The Duke Grievance. In December of 2019, Robert N. Duke paid Grayson $5,000.00 to pursue a race discrimination case against Duke's employer, the United States Post Office. Grayson deposited the check into her personal account rather than a client trust account. After weeks of no communication, Duke terminated the attorney, but was able to arrange a meeting with her to retrieve several documents he had left with her. At the meeting, the attorney convinced Duke to keep her on the case, but, thereafter, communications again ceased, and a case was never filed. Duke never received a refund, nor the documents he had previously delivered to Grayson.

4. The Clark Grievance. In January of 2020, Dylan Clark retained Grayson to represent him in an ongoing paternity/child custody case. He paid the attorney $5,350.00 which she did not deposit in a client trust account. Grayson neglected the case, failed to perform the work she was hired to do, failed to account or refund unearned funds and moved her law office in June of 2020 without telling Clark.

5. The Nakeia Billingsley Grievance. In December of 2017, Nakeia Billingsley hired Grayson to represent her in a race discrimination suit against her former employer, and then to represent her in a 2020 bankruptcy. Grayson filed the discrimination lawsuit in August of 2019, but failed to disclose the lawsuit in the bankruptcy schedule of pending claims. In November 2020, the employer in the discrimination suit filed a motion for judgment on the pleadings for failure to disclose the bankruptcy. The attorney never responded, and the employer's motion was granted. The federal court ordered Grayson to provide a copy of the order to the bankruptcy trustee, but she never did. In the bankruptcy case, Billingsly requested certain assets be included in re-affirmation agreements, but the attorney neglected to include them. The bankruptcy was discharged, and the attorney never notified Billingly.

After several meetings with the Bar Association, two additional counts were added to the Complaint. One related to Grayson's failure to cooperate with the investigation, and to provide documentation and account information, as promised. The other relates to the four prior grievances which resulted in the 2017 private reprimand.

Â¶6 The PRT held a hearing on June 29, 2021, and heard from the Bar Association investigator Les Arnold and the clients who filed the grievances, with the exception of Taylor. Grayson represented herself and offered mitigating evidence which primarily included medical information relating to mental, physical, psychological, and emotional issues which were filed under seal.[11] The attorney also maintained that she never took any fees from clients which were not earned, and that she never deposited any funds into her personal or operating accounts unless she had already earned them as well.

Â¶7 On July 19, 2021, the Bar Association filed agreed findings of fact and conclusions of law which, by agreement with the attorney, laid out facts relating to each grievance and noted her failure to provide information, as well as her failure to respond to the Complaint. On August 16, 2021, the PRT filed its report, detailing all the evidence presented in the June 29, 2021, hearing. It determined that the respondent needed time to properly address her mental and emotional disabilities before she was capable of practicing law again. It recommended that the respondent be suspended from the practice of law for a period of two years and a day and that she be assessed costs in the amount of $3,862.34.

Â¶8 Initially, the Bar Association sought a one year suspension, but changed its recommendation after it learned that the attorney allegedly lied in the PRT hearing about having requested Associate Membership to the Bar Association. During the hearing, she testified that she had submitted an application for Associate membership to the Executive Director of the Bar Association. The letter, identified as "Statement in Support of Application for Associate Membership -- Tynan Grayson" is dated April 16, 2021, and addressed to the Executive Director of the Oklahoma Bar Association. Other than presenting her copy of the letter, there is no evidence that it was ever mailed or ever received by the Bar Association. Nor is there evidence that it was not received. The Bar Association now recommends that the Court follow the recommendations of the PRT due to Grayson's failure to cooperate, communicate, and provide an accounting of funds and due to her lack of respect to the Bar, the disciplinary process, and the Court. After the briefing was complete, the cause was assigned to my chambers for disposition on October 4, 2021.

THE ATTORNEY'S CONDUCT WARRANTS A 
SUSPENSION OF TWO YEARS AND A DAY FROM THE 
PRACTICE OF LAW AND THE ASSESSMENT OF COSTS.

Â¶9 This Court is the ultimate arbiter of appropriate sanctions in bar discipline.[12] We may choose to reject or to accept the trial panel's recommendations.[13] We are not bound by agreed findings, conclusions of law, or recommendations for discipline.[14] Rather, the ultimate responsibility for imposition of professional discipline is ours alone. The Court's review is de novo in considering the record presented as well as the recommendations for discipline.[15]

Â¶10 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[16] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis. Each situation involves unique transgressions and mitigating factors.[17] There can be little doubt that the attorney has brought discredit upon the legal profession by subjecting herself to discipline.[18] Discipline should be sufficient to persuade the attorney that such conduct will not be tolerated.[19] However, mitigating circumstances may be considered in evaluating both the attorney's conduct and assessing the appropriate discipline.[20]

Â¶11 We have reviewed the record, and the evidence shows that the attorney violated all of the Rules of Professional Conduct and Rules Governing Disciplinary Proceedings as alleged. Furthermore, the attorney has not been totally cooperative with the Bar Association. Although Grayson admits to a lack of communication with clients, she blames all of her conduct on various serious medical issues which gave her anxiety and caused her to struggle and shut down. She has not admitted to all of her conduct, or that she violated any of the Rules of Professional Conduct. Nor has she been forthcoming with documentation or information. Apparently, she does not agree that any suspension should be required. Rather, her brief is devoted to a regurgitation of the facts, and complaints about how the Bar Association paints an incomplete and inaccurate picture.

Â¶12 Respondent admits that although she needed help, she is now getting help, and that she is able and ready to serve clients. However, she recognizes that she needs to shut down her practice for a period of time. Although she admits that she needs to stop practicing, she has not done so. Rather, she has reduced the number of clients, and only does "what work she must do."

Â¶13 In other attorney misconduct neglect cases, discipline has ranged been from public censure to a suspension of two years and a day. For example, when neglect occurs without affirmative acts of misconduct, a public censure has been warranted. In State ex rel. Oklahoma Bar Association v. Brewer, 1999 OK 101, 998 P.2d 605, this Court found public censure to be appropriate discipline for a lawyer who failed to: file appropriate papers to initiate proceedings for his client; keep his client reasonably informed; and respond to the Bar Association's requests for information regarding grievances. In an earlier proceeding, the lawyer had been publicly reprimanded for failure to respond to the Bar Association's request for information concerning a complaint.[21] In State ex rel. Oklahoma Bar Assciation v. Benefield, 2002 OK 37, Â¶16, 51 P.3d 1198, the Court suspended the lawyer for sixty days for being neglectful. He was remorseful in his behavior, acknowledged his wrongdoing, and paid back his clients.

Â¶14 We suspended the attorney in State ex rel. Oklahoma Bar Association v. Denney, 1980 OK 143, 617 P.2d 1351, for three months when his neglect resulted in extinguishing a client's right to appeal.[22] We gave a neglectful attorney who did not cooperate with the Bar Association's investigation, and suffered from anxiety, but offered no supporting documentation, a one-year suspension in State ex rel. Oklahoma Bar Association v. Fields, 2021 OK 34, 489 P.3d 1016. In State ex rel. Hummel, 2004 OK 30, 89 P.2d 1105, the neglectful attorney failed: to communicate with clients; to turn over client files; to disclose facts to clients, and entered into unauthorized settlement agreements; to return unearned funds, suffered from clinical depression, and had previously received two private reprimands also earned a one-year suspension.[23]

Â¶15 A two-year suspension was warranted in State ex rel. Oklahoma Bar Assciation v. Weigel, 2014 OK 4, 321 P.3d 168, for an attorney who took fees from clients, failed to complete work, deposited unearned fees into his general account, failed to act with diligence and provide adequate representation, and violated numerous other rules.

Â¶16 State ex rel. Oklahoma Bar Assciation v. Jenkins, 2001 OK 54, 27 P.3d 91, and State ex rel. Oklahoma Bar Association v. McCoy, 2010 OK 67, 240 P.3d 675, concerned lawyers which the Court suspended from the practice of law for two years and a day for neglecting clients, failing to keep clients informed, charging unreasonable fees, engaging in misrepresentation, and causing incurable harm to clients and discredit to the legal profession.

Â¶17 Without doubt, this lawyer has committed acts of client neglect and has violated the public trust. Given the circumstances of this cause, combined with Grayson's medical limitations, and the delay and disservice she caused her clients, regardless of whether she really ever requested Associate Membership status, she should be suspended for two years and a day and assessed the costs of this proceeding in the sum of $3,862.34.

Â¶18 A suspension from the practice of law for a period of two years and one day is tantamount to disbarment because the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart.[24] Before an attorney who has been disciplined for more than two years may be readmitted to the practice of law, it must be established that his/her conduct will conform to the high standards required of a member of the Oklahoma Bar.[25]

Â 

CONCLUSION

Â 

Â¶19 The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of practitioners of the law is solely vested in this Court.[26] It is our difficult duty to withdraw or suspend the license to practice law if it is necessary to protect the interest of the public, the legal profession, and this tribunal.[27] Upon a de novo review of the record, we determine that the attorney's conduct warrants a two years and a day suspension, and the imposition of $3,862.34 in costs due not later than ninety days after this opinion becomes final.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] Rule 6.2, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A provides:

The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth.

[2] Rule 1.3, Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] Rule 1.4, Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] Rule 1.5, Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A provides in pertinent part:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. . . .

[5] Rule 1.15, Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A provides in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.

(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien. . . .

[6] Rule 8.4 of the Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3-A provides in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct. . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

[7] Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A provides in pertinent part:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[8] Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A provides in pertinent part:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

[9] In the initial complaint filed June 1, 2021, the Bar Association sought whatever discipline "this Court finds equitable and proper." At the conclusion of the trial panel hearing, the Bar Association recommended a one-year suspension. In its Brief in Chief, the Bar Association states that the trial panels recommendation of two years and one day is not unreasonable, after it learned, at the hearing, that respondent was untruthful about her claim that she had submitted an application for associate status to the Executive Director of the Bar Association. The Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 2011 Ch. 1, App. 1, Article II, Section 2 defines an Associate Member as:

A member in good standing who files, or on whose behalf there is filed, with the Executive Director, a statement that, by reason of illness, infirmity, or other disability, he or she is unable to engage in the practice of law shall become an Associate Member of the Association for the duration of such illness, infirmity or other disability until restored to the former classification. An Associate Member shall not engage in the practice of law or be required to pay dues during such period. He or she may, on annual request, receive the Bar Journal during his or her disability. The member, on causing an appropriate showing thereof to be made to the Executive Director, shall be reclassified to be an Active Member and shall be required to pay the dues applicable thereto beginning January 2nd next following such reclassification and to pay the cost of the Bar Journal during such disability if he or she has elected to receive it.

[10] Rule 5.1 of the Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A provides in pertinent part:

(c) In a matter involving lesser misconduct, as defined in Rule 5.1(d), prior to the filing of formal charges, the Office of General Counsel may refer the respondent to the diversionary program. Such program may include, but is not limited to, law office management assistance, Lawyers Helping Lawyers, psychological counseling, continuing legal education programs, and professional responsibility classes. Before referring the respondent to the diversionary program, the Office of General Counsel shall consider the following criteria:

(1) the nature of the misconduct alleged,

(2) whether the misconduct alleged appears to be an isolated event,

(3) whether participation in the diversionary program could benefit the respondent, and

(4) whether participation in the diversionary program might jeopardize protection of the public.

(d) Lesser misconduct is misconduct that does not warrant a sanction restricting the respondent's license to practice law. The misconduct alleged shall not be considered lesser misconduct if any of the following considerations apply:

(1) the misconduct involved the misappropriation of funds;

(2) the misconduct resulted in or is likely to result in substantial prejudice to a client or other person;

(3) the respondent has been publicly disciplined in the last three years;

(4) the misconduct is of the same nature as misconduct for which the respondent has been disciplined in the last five years;

(5) the misconduct involved dishonesty, deceit, fraud or misrepresentation by the respondent; or

(6) the misconduct constitutes a serious crime (any felony or lesser crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects).

(e) The Office of General Counsel and the respondent shall negotiate a contract, the terms of which shall be tailored to the individual circumstances of the respondent and the misconduct alleged. In each case, the contract shall be signed by the respondent and the General Counsel, or the General Counsel's representative. The contract shall provide for oversight of all conditions attached to the diversion, and that the respondent shall pay all costs incurred by virtue of the diversion. The contract may be amended upon agreement of the parties.

(f) The contract shall include a specific acknowledgment that a material violation of a term of the contract renders voidable the respondent's participation in the program, and that an investigation of the misconduct alleged may then proceed or that the matter may then be forwarded to the Professional Responsibility Commission for its consideration, as provided in Rule 5.3, RGDP. A material violation of the contract shall be admissible as evidence in a subsequent disciplinary proceeding.

(g) If the contract requires a monitor, the respondent waives confidentiality to the extent that the monitor is required to make disclosures or reports to the office of General Counsel.

(h) The respondent has the right to not participate in the diversionary program. In that event, the matter shall proceed as though no offer of referral was extended.

(i) The complaining party will be advised that the respondent has been referred to a diversionary program.

(j) After the parties enter into the contract, the disciplinary matter shall be held in abeyance pending the respondent's successful completion of the terms of the contract. Successful completion of all terms of the contract shall result in the disposition negotiated in the contract.

[11] On August 27, 2021, the Chief Justice ordered that the medical records be included in the record as filed under seal, as requested by the PRT.

[12] State ex rel. Oklahoma Bar Association v. Rennie, 1997 OK 108, Â¶20, 945 P.2d 494; State ex rel. Oklahoma Bar Association v. Butler, 1992 OK 150, Â¶9, 848 P.2d 540.

[13] State ex rel. Oklahoma Bar Association v. Rennie, see note 12, supra; State ex rel. Oklahoma Bar Association v. Wilkins, 1995 OK 59, Â¶12, 898 P.2d 147.

[14] State ex rel. Oklahoma Bar Association v. Erickson, 2001 OK 66, Â¶14, 29 P.3d 550; State ex rel. Oklahoma Bar Association v. Israel, 2001 OK 42, Â¶13, 25 P.3d 909.

[15] State ex rel. Oklahoma Bar Association v. Isreal, see note 14, supra; State ex rel. Oklahoma Bar Association v. Bolusky, 2001 OK 26, Â¶14, 23 P.3d 268; State ex rel. Oklahoma Bar Association v. Dershem, 2001 OK 7, Â¶12, 21 P.3d 639.

[16] State ex rel. Oklahoma Bar Association v. Patterson, 2001 OK 51, Â¶29, 28 P.3d 551; State ex rel. Oklahoma Bar Association v. Eakin, 1995 OK 106, Â¶0, 917 P.2d 644; State ex rel. Oklahoma Bar Association v. Bolton, 1994 OK 53, Â¶16, 880 P.2d 339.

[17] State ex rel. Oklahoma Bar Association v. Doris, 1999 OK 94, Â¶38, 991 P.2d 1015; State ex rel. Oklahoma Bar Association v. Rozin, 1991 OK 132, Â¶10, 824 P.2d 1127.

[18] Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A, see note 7, supra.

[19] State ex rel. Oklahoma Bar Association v. Miskovsky, 1997 OK 55, Â¶15, 938 P.2d 744.

[20] State ex rel. Oklahoma Bar Association v. Southern, 2000 OK 88, Â¶35, 15 P.3d 1; State ex rel. Oklahoma Bar Association v. Taylor, 2000 OK 35, Â¶33, 4 P.3d 1242.

[21] Similarly, in State ex rel. Oklahoma Bar Association v. Green, 1997 OK 39, 936 P.2d 947, the Court imposed a public censure for failing to provide competent representation, failing to act with reasonable diligence and promptness, and failing to adequately communicate with the client.

[22] In State ex rel. Oklahoma Bar Association v. Robertson, 1980 OK 176, 620 P.2d 382, a three-month suspension was placed on an attorney whose neglect resulted in a default judgment.

[23] In State ex rel. Hummel, 2004 OK 30, 89 P.2d 1105, Kauger, J., dissented, noting that the entire proceeding should have been brought under Rule 10, Rules Governing Disciplinary Proceeding, 5 O.S. 2011, Ch. 1, Ap. 1-A, and the attorney should have immediately been suspended until further order of the Court. The attorney in this cause also meets the parameters of an immediate suspension under Rule 10, but the matter was, instead, brought under Rule 6, 5 O.S. 2011, Ch. 1, Ap. 1-A.

[24] Rule 11.1, 5 O.S. 2011, Ch. 1, App.1--A, Rules of Disciplinary Proceedings, provides in pertinent part:

A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association. . . .

[25] Rule 11.4, 5 O.S. 2011, Ch. 1, App. 1--A, Rules of Disciplinary Proceedings, provides:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

[26] State ex rel. Oklahoma Bar Association v. Holden, 1995 OK 25, Â¶18, 895 P.2d 707; State ex rel. Oklahoma Bar Association v. Farrant, 1994 OK 13, Â¶8, 867 P.2d 1279; Tweedy v. Oklahoma Bar Association, 1981 OK 12, Â¶4, 624 P.2d 1049.

[27] State ex rel. Oklahoma Bar Association v. Raskin, 1982 OK 39, Â¶22, 642 P.2d 262.

Â 

Â 

Â 

Â