STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BAILEY2023 OK 34Case Number: SCBD-6776Decided: 04/04/2023As Corrected; April 18, 2023THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 34, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
MARK KENDALL BAILEY, Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent is an attorney licensed to practice law as a member of the Oklahoma Bar Association. The Oklahoma Bar Association's Second Amended Complaint against respondent alleged eight counts of professional misconduct. A hearing was held before a trial panel of the Professional Responsibility Tribunal. The panel found the allegations on all counts to be established and recommended respondent be suspended for the practice of law for two years and one day. We hold: The evidence is clear and convincing respondent violated several provisions of the Oklahoma Rules of Professional Conduct and Rules Governing Disciplinary Proceedings, and the proper discipline is to disbar respondent and order him to pay the costs of the proceeding.

RESPONDENT DISBARRED; RESPONDENT'S NAME STRICKEN FROM
ROLL OF ATTORNEYS; AND ORDERED TO PAY COSTS

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Tom M. Cummings, Oklahoma City, Oklahoma, for Respondent.

EDMONDSON, J.

¶1 Respondent is currently a lawyer licensed by this Court. Allegations of professional misconduct against respondent are made in a second amended complaint filed by the Bar Association. This complaint is fifty pages long with 233 numbered paragraphs, and in its eight Counts it lists numerous violations of various ethical rules for lawyers.

¶2 Respondent states no misconduct occurred, raises issues of both fact and law, and challenges facts raised by the Bar as well as the Bar's understanding of rules of professional conduct. Respondent also makes a procedural challenge as well as raising an affirmative defense. The controverted issues of fact and law presented by Bar and respondent for this Court to adjudicate involve all of the allegations made by the Bar against respondent in the fifty-page complaint.

¶3 We conclude the evidence presented shows respondent violated various rules: Count One, RGDP, Rule 1.3 and a diversion agreement; Count Two, ORPC, Rules 1.4, 1.5, 1.15, 1.16(d), 8.1 (b), and RGDP, Rules 1.3, and 5.2; Count Three, ORPC, Rules 1.1, 1.4, 1.5, 1.15(c) & (d), 1.16(d), 3.1, 8.4(c) & (d), and RGDP, Rules 1.3 and 5.2; Count Four, ORPC, Rules 1.4, 1.5, 5.3, 8.1(b), 8.4(c), and RGDP, Rules 1.3 and 5.2; Count Five, ORPC, Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), 3.1, 5.3, 8.1(b), 8.4(d) & (e), and RGDP, Rules 1.3 and 5.2; Count Six, ORPC, Rules 1.3, 1.4, 1.5, 8.1(b), and RGDP, Rules 1.3 and 5.2; Count Seven, ORPC, Rules 1.1, 1.3, 1.4. 1.5, 1.16(d) 8.1(b), 8.4(c), and RGDP, Rule 1.3; Count Eight, ORPC, Rules 3.4, 8.4(b) and (d), and RGDP, Rule 1.3.

¶4 We conclude the appropriate discipline required is to disbar respondent and strike his name from the roll of attorneys. The Bar filed a motion to tax costs in the amount of $24,797.81, and the motion is granted. Respondent is ordered to pay costs of the proceedings in the sum of $24,797.81.

I. Court's Review of the Record

¶5 A trial panel of the Professional Responsibility Tribunal held a hearing during nine days and found each of the eight Counts to be established by clear and convincing evidence. The trial panel recommended discipline in the form of respondent's suspension from the practice of law for two years and one day.

¶6 This Court possesses an exclusive, original, and nondelegable constitutional responsibility to regulate the practice of law and the licensure, ethics, and discipline of legal practitioners in this state.de novo every aspect of a disciplinary inquiry, and the findings of fact, conclusions of law, and recommendation of discipline made by a trial panel of the Professional Responsibility Tribunal are neither binding nor persuasive for this Court's review.

¶7 This Court's de novo review includes the evidence presented, stipulations, trial panel report, pleadings, briefs, and additional filings by the parties to determine whether the Bar Association met its burden for showing a respondent's professional misconduct.

¶8 Respondent's brief may be summarized: (1) The Bar's Second Amended Complaint is improper and should be stricken; (2) Laches should apply to a grievance made against him; (3) Testimony against respondent by former clients, former employees, and witnesses for the Bar Association is not credible, or inaccurate, or fails to show misconduct; (4) No professional misconduct occurred and the proceeding against him should be dismissed; (5) If the Court determines professional misconduct occurred, then such conduct does not warrant the recommended discipline of a suspension from the Bar Association for two years and one day. Respondent agrees we must weigh the value of all testimony for the purpose of applying a clear and convincing evidentiary standard, and he asserts his testimony should be viewed as credible and the testimony against him as not clear and convincing.

II. Respondent's Procedural and Due Process Challenges
to the Second Amended Complaint, and Assertion of Laches

¶9 Respondent's post-hearing brief argues the Bar's Second Amended Complaint is a procedural nullity. He alleges this amendment was untimely, without leave of a court, and without his consent. He relies upon Rule 6.5 of the Disciplinary Rules, 12 O.S. § 2015

¶10 Respondent's procedural challenge to the second amended complaint is without merit, and some of the reasons why this is so include the following: (1) Respondent consented to the second amendment to the complaint,

¶11 Certain procedural rights in litigation may be defined as primarily personal rights and may be waived by the person possessing the right,

¶12 Respondent's brief does not refer to any argument before the trial panel, or in the brief itself, relating to prejudice caused by the procedure for filing the amended complaints. Alleged procedural errors are usually examined to determine the presence of prejudice to the interests of an objecting party.

¶13 Respondent's reliance upon laches is without merit. Assuming laches, an equitable affirmative defense to a claim in equity,sui generis proceeding,

¶14 Respondent's brief states that one of the allegations made against him could be resolved by a courthouse surveillance video. Respondent's brief does not point to evidence before the trial panel concerning the existence, storage, and maintenance of security videotapes, or their relation to the time and location of the events. Respondent's argument is unsupported by a factual record and his assertion of laches is unsupported by facts and is without merit.

III. Eight Counts of Professional Misconduct

¶15 Respondent and the trial panel have very different views concerning facts in record. Respondent's narrative is that no professional misconduct occurred, the witnesses against him are mistaken or not credible, and "this mammoth complaint seeks to elevate quantity over quality and throws around a lot of allegations with the hope that by sheer force of number . . . something will stick."each of the eight counts of misconduct was shown by the evidence, and the panel "suggests that a finding with respect to just one of the eight counts in this case warrants the discipline recommended" of a suspension for two years and one day. A suspension for two years and one day has the same effect as disbarment for the purpose of a readmittance procedure after a suspension.

Count One

¶16 Respondent had a dispute in a medical clinic parking lot, and it resulted in a criminal charge against respondent for striking a pedestrian while driving his truck. The dispute involved respondent, his passenger who is also his legal assistant/secretary/paralegal, and the pedestrian. The pedestrian consulted with an Assistant District Attorney and agreed the criminal charge against respondent could be dismissed in the interests of justice if respondent obtained counseling or education for self-control.

¶17 The criminal charge resulted in a professional disciplinary proceeding against respondent. The PRC offered a private reprimand conditioned upon respondent's successful completion of certain terms and conditions for a one-year period in the attorney diversion program. The terms and conditions included no additional professional misconduct. The Bar presented evidence respondent committed an act of misconduct during the one-year diversion period. The PRC authorized a complaint based upon the allegations relating to the parking lot dispute which is presented as Count One of the second amended complaint.

¶18 In summary, the testimony of the witnesses to the event, the law enforcement investigators, and the prosecutors is more credible than respondent and his legal assistant on the issue of what happened in the parking lot. The allegations of Count One raise several criminal statutes, and the trial panel concluded respondent violated Rule 8.4(b) of the Oklahoma Rules of Professional Conduct (ORPC), by committing a criminal act. We decline to make a determination whether a criminal act occurred, but use the same conduct to conclude a different ethical rule was violated.

¶19 In State ex rel. Oklahoma Bar Association v. Besly, 2006 OK 18136 P.3d 590State ex rel. Oklahoma Bar Association v. Dobbs, 2004 OK 4694 P.3d 31the criminal statute violated and the criminal conduct of respondent when alleging a violation of Rule 8.4(b). What the Bar alleges as a violation of an ethical rule, here Rule 8.4(b), is that which the Bar must show by evidence and then brief to this Court after the trial panel hearing.21 O.S. §§ 645Besly and Dobbs, supra.

¶20 Complainant's two briefs do not cite to any of these assault and battery statutes when discussing the pedestrian's allegation of respondent's truck hitting her. The Bar does not address the elements of any criminal statutes the Bar alleges were violated.

¶21 A few issues arise when the Bar does not mention a specific criminal statute in relation to the evidence produced. For example: (1) The Bar is asking the Court, as a finder of fact, to apply law in a circumstance similar to either (a) failing to provide a jury with instructions for determining a criminal act by a defendant based upon the evidence,based upon the evidence;based upon the evidence with reference to the Bar's alleged criminal statutes;State ex rel. Oklahoma Bar Association v. Besly, supra, State ex rel. Oklahoma Bar Association v. Watkins, supra, Colton v. Huntleigh USA Corp., supra.

¶22 We conclude we need not analyze the elements each of the criminal statutes alleged by the Bar in Count One, link them to the evidence before the trial panel, adjudicate whether Rule 8.4(b) was violated, and then provide a sua sponte explanation of the associated legal issues. Our conclusion is based in part upon: (1) We find respondent violated RGDP, Rule 1.3 concerning the same conduct the Bar uses for an alleged ORPC, Rule 8.4(b) violation; and (2) We find additional professional misconduct by respondent in this proceeding and disbarment is a proper discipline apart from applying Rule 8.4 in Count One.

¶23 Rule 1.3, R.G.D.P. may be applied to the evidence without addressing which criminal statute was violated. This rule provides as follows.

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

The evidence is clear and convincing respondent's conduct in the parking lot was contrary to prescribed standards of conduct, and are reasonably found to bring discredit to the profession.

¶24 A witness employed at the clinic described respondent's use of his pickup in "playing chicken" with a pedestrian by starting and stopping his vehicle, revving the engine, and squealing the truck's tires. Another clinic witness testified her impression at the time was that respondent was trying to hit the pedestrian with his truck. The testimony of these two witnesses, clinic employees, is more credible than the testimony of respondent's legal assistant. Respondent disputes the pedestrian's claim respondent's truck made contact with her body. The evidence is clear that the pedestrian was also upset and slapped respondent's truck. We find the pedestrian's testimony more credible on the issue whether respondent's truck made contact prior to the pedestrian slapping his truck.

¶25 The evidence showed respondent's conduct in the parking lot resulted in both a public news story as well as a criminal charge. A witness explained a dismissal of a criminal charge "in the interests of justice" could occur for many different reasons, and such dismissal does not necessarily mean the alleged criminal act did not occur. The evidence is clear and convincing that respondent was aware while still in the parking lot a pedestrian claimed she had been hit by his truck. The evidence is clear and convincing that respondent left the scene where a person was claiming he caused the event. After leaving the parking lot he relied on his legal assistant to contact the police.

¶26 A criminal arrest where a lawyer has admitted to the conduct may be used to support an adjudication of a violation of Rule 1.3, even when a District Attorney ultimately declines to file the criminal charge. For example in State ex rel. Oklahoma Bar Association v. Smith, 2011 OK 8246 P.3d 1090Id. 2011 OK 8

¶27 Respondent's misconduct in the parking lot was subject to a Diversion Program Agreement with the Bar. The Bar alleged in Count One that respondent breached this agreement in December 2018. The PRC made a determination in February 2019 that respondent breached the terms of his diversion agreement.respondent's conduct with the Bar which arose from a grievance and fee dispute filed by a former client, DeRoussett. The reference to December 2018 refers to respondent personally delivering a check to a Bar employee for a partial refund of unearned fees to DeRoussett and the presence of fecal material on respondent's check.

¶28 The executed diversion agreement excluded the then known DeRoussett grievance as a breach of the diversion agreement, i.e., misconduct associated with the lawyer-client relationship. But the exclusion but did not include respondent's conduct with the Bar and its employees as a result of the DeRoussett grievance. Facts relating to respondent's delivery of the soiled check are alleged in Count Two, and are used to show breach of the diversion agreement in Count One. We address these allegations in Count Two, and agree respondent's conduct violated his diversion agreement. In summary, we conclude respondent violated RGDP, Rule 1.3 in Count One. He also violated the diversion agreement which was alleged as misconduct in Count Two.

Count Two

¶29 Mr. DeRoussett retained respondent to represent him and file an application for a pardon. He testified: "My understanding was $2,500 for him to file the papers for a governor's pardon."

¶30 On cross-examination, DeRoussett testified his view was that respondent had done no work on the pardon application, and he did not want respondent to submit a pardon application containing information he had not served the time sentenced.

¶32 The Bar's letter stated the grievance alleged violations of Rules of Professional Conduct, 1.5, 1.15, 1.4, and 1.16(d), as well as RGDP, Rule 1.3.

¶33 The grievance against respondent stated a form for an application seeking a pardon may be downloaded for free from the Oklahoma Pardon and Parole Board's website, and respondent had failed to complete any part of the application. Respondent stated he received a letter from DeRoussett stating his services were no longer required, and respondent sent him an invoice for the work he performed, and "may have" provided DeRoussett with the paperwork produced for him.

¶34 Respondent testified he had experience filing pardon applications.

¶35 On March 8, 2018, the Bar sent respondent a letter stating respondent must file a supplemental response including a "full accounting" and a complete copy of Mr. DeRoussett's client file "demonstrating the work was performed," and if after his review of the file he believes a refund is due Mr. DeRoussett then to please enclose a refund check.

¶36 An email from an assistant general counsel was sent to respondent's counsel on May 17, 2018, and explained: "The information I have repeatedly requested regarding the amount of time and the amount charged for each service, as well as a copy of the client's file to verify the accounting and alleged work performed is relevant information that is necessary for this office to be able to confirm that Mr. Bailey did, in fact, perform the work and earn the full fee." This email also explained resolution of the grievance was simple: provide the documents showing respondent earned the fee in full, or provide an accounting with a refund for any unearned portion of the fee, and a copy of the client file, and then the grievance could be dismissed. The email also stated: "The complainant has been attempting to obtain a complete and accurate accounting and refund of unearned fees from Mr. Bailey since July 25, 2016."

¶37 On May 23, 2018, the Bar received documents from respondent which included a single page of respondent's "Client File Notes," referencing actions taken on six specific dates: (1) emailed a pardon packet; (2) emailed a pardon packet again; (3) office meeting concerning research and other issues; (4) email concerning a pardon packet; (5) telephone call attempting contact; and (6) office received letter from client dismissing services, and client sent a close-out letter with list of work performed on case.

¶38 Based upon the Bar's view that respondent failed to provide an accounting to the Bar's satisfaction and his prior conduct as stated in Count One of the complaint, the Bar asked for an additional drug test. Respondent, through his counsel, requested that a specific assistant general counsel of the Bar Association recuse herself from respondent's case. The Bar Association declined this request and stated respondent's "hostility towards the assigned assistant general counsel was not a valid reason for her recusal."

¶39 Respondent's counsel questioned the Bar's requests for drug tests. The Bar responded and explained in part as follows.

. . . if he is not abusing any substance or having anger issues, it is difficult to understand why Mr. Bailey simply cannot follow the requests of this office and respond fully and fairly and provide the accounting/and/or refund . . .

. . . If Mr. Bailey continues to display an attitudinal pattern while on diversion or when dealing with this office, we will continue to consider whether there is a substance abuse and/or mental health issue that needs to be addressed.

Respondent later found records of three meetings he had with DeRoussett not listed in his original accounting, and after considering these meetings he believed no refund was owed. Respondent's fee contract with DeRoussett expressly provided that a fee was earned when paid and fees were not refundable.

¶40 DeRoussett obtained new counsel and he objected to respondent using a non-refundable retainer contract for the service respondent was hired to provide. The Bar asked for a response from respondent. In February of 2018 he sent a letter to the Bar Association, and explained the following.

Unfortunately, an old contract created on a template containing non-refundable language was inadvertently used and memorialized the agreement. To avoid any further mishaps involving the objectionable language and out of an abundance of caution, I have drafted a letter (see Exhibit A) to all of my current clients informing them that if they should have an older contract with that language, to disregard with further explanation as to what the policy of my firm is and that any unearned fee would be returned if requested.

Complainant's Trial Panel Exhibits, vol. 1, exhibit 40, pg. 1. This letter is dated January 31, 2018. Respondent stated he made a "good faith gesture" and he offered an amount to DeRoussett and his offer was rejected.

¶41 Respondent was advised if he wanted to submit a refund to DeRoussett and have this refund considered by the PRC at its next meeting, then the refund should occur prior to December 7, 2018. Respondent suggested his work be assessed by another lawyer to determine if his $2,500.00 fee was proper. On the afternoon of December 12, 2018, respondent visited the offices for the Bar Association and presented two checks to an employee of the Bar. One was in the amount of $290.00 for payment of diversion program monitoring fees, and another in the amount of $700.00 payable to DeRoussett.

¶42 An employee of the Bar testified that respondent instructed the Bar's employee to deliver the $700.00 check to a specific assistant general counsel of the Bar Association,

¶43 Respondent argues in this Court both: (1) The Bar Association's expert stated fecal material was present but did not prove human fecal matter was on the check; and (2) Respondent's mother testified respondent had accidentally soiled himself several months previously and the checkbook was soiled as well.

¶44 The Professional Responsibility Commission determined respondent's conduct on December 12, 2018, was a breach of his diversion contract. The Commission authorized formal charges against respondent. The Commission's action was taken on February 15, 2019.

¶45 Rule 1.3 (RGDP) states a lawyer should not "act contrary to prescribed standards of conduct" when the act "would reasonably be found to bring discredit upon the legal profession." Whether we view respondent's delivery of the soiled check as an intentional act, as argued by the Bar, or as unintentional, as argued by respondent, such conduct is contrary to prescribed standards of conduct in our society where people recognize the potential harm from exposure to fecal matter,

¶46 DeRoussett attempted to cash respondent's $700.00 replacement refund check at respondent's bank, and his bank refused to cash the $700.00 check.

¶47 The trial panel found "The conduct of the Respondent from the use of the original contract, uncooperative attitude towards the OBA's investigation, his disciplinary history with the OBA raise concerns for the public's respect for the profession and safety of the public." The trial panel found respondent was retained to file an application for a pardon.

¶48 Respondent's brief does not cite authority for the proper use of various retainers, flat fees for services, or attempt to explain why the amounts for his specific fees were proper. He states his clients agreed to the fees they paid and he performed the services required by the various written contracts. He states the language of his contract with DeRoussett was changed during the grievance proceedings. His letter to the Bar states it was never his intention to create a contract with a non-refundable fee deemed earned upon the claimant signing a contract for services. Respondent's legal assistant testified respondent had been informed by the Bar to not use the form fee contract with language making a legal fee for services non-refundable. However, this language appears "in almost all of the contracts involved in the grievances" because the computer with the correct form crashed, and when an older office computer was substituted the legal assistant continued to complete the fee contracts with the prohibited language.

¶49 Count Two of the second amended complaint alleges respondent violated ORPC, Okla. Stat. Ann. tit. 5, Ch. 1, App. 3-A (West 2011), Rules 1.4 (improper communication with client), 1.5 (improper fees), 1.15 (improper safekeeping of property), 1.16(d) (failing to refund unearned fees and client's documents), 8.1 (b) (failure to properly respond in a disciplinary matter), and also RGDP, Okla. Stat. Ann. tit. 5, Ch. 1, App. 1-A (West 2011), Rules 1.3 (Acts Contrary to Prescribed Standards of Conduct) and 5.2 (failure to timely or properly respond to a grievance).

¶50 We discussed retainers in McQueen, Rains, & Tresch, LLP v. CITGO Petroleum Corp., 2008 OK 66195 P.3d 35

Non-refundable retainer fees and other non-refundable provisions have been upheld where: the fees set out are reasonable; the contract is negotiated with a sophisticated client and the retainer agreement contains an agreement by the client to compensate the lawyer if the client terminates the relationship; the contract is in writing with a clear statement of the consequences of the provision; or where the attorney, in entering the contract, has changed positions or incurred expenses to meet the needs of the client.

Id. 2008 OK 66

¶51 Respondent's contract with DeRoussett states the $2,500.00 fee is "non-refundable" and "earned upon the signing of this contract."

¶52 We have explained: "Under Rule 1.5, attorneys have the professional responsibility not to make an agreement for, charge, or collect unreasonable fees or expenses." In re Adoption of Baby Boy A, 2010 OK 39236 P.3d 116Id. These factors are well known because State ex rel. Burk v. City of Oklahoma City, 1979 OK 115598 P.2d 659Baby Boy A, 2010 OK 39Burk decision: "Following the Burk decision, Oliver's Sports Center, Inc., 1980 OK 120Baby Boy A, 2010 OK 39

¶53 In Baby Boy A, we cited ORPC, Rule 1.5, 5 O.S.2001, ch.1, app.3--A, and applied eight factors listed in Rule 1.5, which are as follows.

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

A single factor is not determinative of the reasonableness of a fee. For example, "the time element must be considered in connection with other factors [and] [f]ees cannot fairly be awarded on the basis of time alone."

¶54 Respondent's argument before the trial panel did address the reasonableness of his fee for the type of case involved, an application for a pardon, and made reference to the list of tasks his office performed. His response to the Bar stated his reliance upon State ex rel. Oklahoma Bar Association v. Weigel, 2014 OK 4321 P.3d 168Weigel we noted the flat fee must be reasonable,Weigel an unearned portion of the fee must be returned because a fixed fee "cannot impair a client's rights under Rule 1.16(d),"

¶55 Apart from the issue of the amount of a proper fee in this Count, an important principle is not expressly stated by the Bar or respondent, but is present as part of the Bar's application of Rule 1.5 and defining a violation in various Counts of misconduct. The Bar's position is that the eight factors may be used in at least two different ways to meet its evidentiary burden: (1) A Rule 1.5 violation occurs when a respondent used the eight factors to determine a fee, but the factors were erroneously applied based upon either fact or law; and (2) A Rule 1.5 violation is shown when the Bar presents evidence a respondent did not base a fee upon consideration of the eight factors and then applying those which are appropriate. In other words, a respondent is always required to use those factors when determining a reasonable fee for legal services. For the Bar, a Rule 1.5 violation is shown by the absence of a respondent exercising a required professional discretion when setting a fee (an absent professional procedure), and not merely whether the amount of the fee is proper (a reasonable result after a required procedure).

¶56 A lawyer is required by Rule 1.5 to exercise a professional discretion to determine which factors are proper and which are improper, and the weight each has for application when determining a reasonable fee in a circumstance. Respondent's approach is: (1) In Counts Two and Four, respondent states the amount of his fee was typical for the type of case and he states he did the work; (2) In other Counts he does not discuss a typical fee in relation to the fee he required, but does emphasize he did the work he was asked to perform; and (3) He does not address how a typical fee for a matter relates to the amount of typical work in that typical matter, or how his performance and fee compare to the typical.

¶57 Respondent indicates the Bar must prove his fee was excessive and not typical, or that he failed to do the work required by the fee contracts. The Bar indicates it has met its burden of proof when the respondent indicates he did not use professional judgment employing the eight-factor test for determining a fee. In other words, the Bar need not prove what a typical fee was for the legal service respondent provided in order to show his fee was unreasonable. The Bar indicates it may satisfy its burden when the respondent indicates he did not use the eight-factor test in setting his fee, and he is unable to show how an initially obtained unearned flat fee gradually becomes an earned fee as he does the legal work. A clash between respondent's understanding of Rule 1.5 and the Bar's application of the rule to respondent's conduct is a recurring theme in the various Counts of misconduct.

¶58 Respondent's original fee agreement for $2,500.00 was an improper non-refundable retainer agreement for payment of future services. ORPC 1.5. Respondent interpreted this agreement during the grievance proceedings as a mistake, and he would change the language in future agreements with clients. However, he also stated he earned the $2,500.00 fee because the amount was reasonable for attorney services relating to an application for a pardon and he performed work on the application for a pardon. Respondent's interpretation of Rule 1.5 indicates he need not address billable rates for himself and his employees because the client agreed to a flat fee. Respondent did not address the amount of time spent on DeRoussett's case in relation to the factors in Rule 1.5, including hourly billing rates for himself and his assistant. Respondent merely listing certain tasks by himself and his personal assistant as justification for not refunding unearned fees when responding to DeRoussett's letter terminating representation shows a violation of Rule 1.5 by respondent.

¶59 The Bar states respondent violated ORPC, Rule 1.15. This rule requires an advance fee retainer to be held in a segregated account until the fee is earned. The Bar did not address whether respondent's account was a trust account required by Rule 1.15, or whether a degree of culpability based upon (1) commingling, (2) simple conversion, or (3) misappropriation was shown by the evidence.

¶60 The Bar alleged respondent violated ORPC, Rule 1.16(d), which states as follows.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Respondent testified he "may have" returned or provided documents to Roussett after receiving DeRoussett's letter terminating legal services. Respondent did not return or refund unearned fees until after a third lawyer became involved and argued at least some of the $2,500.00 fee was unearned. Respondent violated Rule 1.16(d).

¶61 The Bar alleged respondent violated ORPC, Rule 1.4. This rule requires the lawyer to keep the client reasonably informed and obtain an informed consent from the client.

¶62 Again, the evidence before the trial panel shows a pattern of conduct by respondent taking a client's case when respondent knew, or should have known, an impediment to his client's objective was clearly present, and legal representation required a reasonable effort for the purpose of resolving the impediment; but respondent did not (1) seek proper means to remove the impediment, or (2) inform the client the impediment was insurmountable. Respondent violated ORPC, Rule 1.4.

¶63 The Bar alleged respondent violated Rule 8.1(b).

¶64 In May of 2018, the Bar replied to respondent's "supplemental response purporting to include an itemized statement of services provided to Mr. DeRoussett." The Bar's letter explained respondent did not address time spent on tasks, and fees billed for his legal assistant's work. The Bar requested another response within ten days.

¶65 RGDP, Rule 5.2 requires a lawyer notified of a grievance to file "a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds." The Rule also provides that "[d]eliberate misrepresentation in such response shall itself be grounds for discipline." This Rule states: "The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline." The record shows a long and drawn-out investigation with the Bar requesting responses due to the inadequacy of previous responses. The respondent violated this rule.

¶66 In summary for Count Two, respondent violated ORPC, Rules 1.4, 1.5, 1.15, 1.16(d), 8.1 (b), and also RGDP, 1.3, and 5.2.

Count Three

¶67 Mrs. Collins met with respondent in January 2019. Collins testified respondent told her for $5,000.00 he could "get her son home in six to eight weeks" from the son's incarceration for a twenty-year sentence arising from more than one conviction for driving under the influence.

¶68 Mrs. Collins sold a family vehicle, telephoned respondent's office, and met with respondent on January 7, 2019, to give him a check in the amount of $5,000.

¶69 On February 26, 2019, respondent filed a motion to modify the sentences in her son's cases. Respondent's legal assistant contacted Collins and stated a court date of April 18, 2019, to modify her son's sentence. Collins testified respondent's assistant contacted her and stated the hearing was continued, and respondent was scheduled to meet on May 2, 2019, with an assistant district attorney to work out the details on her son's case.

¶70 Mrs. Collins made unsuccessful attempts to contact respondent, and she contacted her son's former lawyer. The former lawyer advised her to contact the Bar and file a grievance against respondent. Mrs. Collins' former lawyer contacted the Bar on her behalf, and stated respondent had received $5,000.00 to file a frivolous motion to modify a sentence. He explained without an agreement with the District Attorney, the motion to modify the sentence was out of time and without merit. The former lawyer believed respondent was taking advantage of an elderly Mrs. Collins who was desperate to help her son.

¶71 Mrs. Collins filed a grievance on May 6, 2019, met with Bar employees, and showed them the messages on her telephone she sent respondent's legal assistant. She explained her telephone calls to respondent's office were promptly answered when initially meeting respondent and setting a time for payment of his fee, but after payment of the fee her requests for communication went unanswered. On May 9, 2019, the motion to modify sentence was set for a hearing on June 24, 2019. Mrs. Collins telephoned respondent's office and his legal assistant informed her of the pending hearing. Mrs. Collins asked to speak to respondent and requested a return telephone call.

¶72 Respondent's legal assistant contacted Mrs. Collins and informed her a hearing was scheduled for June 24, 2019. An Asst. D.A. stated he was contacted by respondent's legal assistant and was advised respondent "was going to strike the hearing because 'the client filed a bar complaint.'" Mrs. Collins and her former lawyer arrived at the courthouse on June 24, 2019, to observe the hearing on her son's motion, and discovered the hearing had been stricken.

¶73 Mrs. Collins' son, Rob Collins, testified before the trial panel. He stated he was incarcerated and shortly after his sentence in 2016 another attorney filed a motion for a judicial review of Collins' sentence. This motion was denied. He stated his mother hired respondent in 2019. He stated that respondent prepared a motion on his behalf and the attached letters of support had been prepared for his first request for a sentence review by his former lawyer. During cross-examination he testified the paperwork filed by respondent, with the exception of two pages, looked like "all the paperwork I had given him from when I filed my one-year review."

¶74 Rob Collins was brought to the courthouse for his hearing and in the courtroom met and talked to respondent for the first time. He testified respondent told him "everything looked good for me to be released that day to go home." He testified respondent then "went over" to speak with an assistant district attorney, returned to Collins and told him "They changed their mind." Collins stated he could not hear the discussion between respondent and the Asst. D. A. He then stood before the judge and was informed the D.A. must agree for a modification, and the D. A. did not agree. Then respondent left the courtroom and Collins did not see him again.

¶75 Mr. Collins testified that he had four conversations with respondent's legal assistant prior to his appearance before the judge. The assistant told Collins that respondent was "good friends" with the District Attorney and that "it was going to be all worked out." Collins testified that the Asst. D. A. stated in the courtroom "they had never agreed to a modification."

¶76 The Bar notified respondent of Mrs. Collins' grievance. The letter was dated May 14, 2019, included a copy of the grievance, and advised respondent to reply within twenty days. Respondent failed to respond.

¶77 On August 8, 2019, the motion to modify was set for August 19, 2019, and on August 14, 2019, respondent filed an application for a writ of habeas corpus ad prosequendum to have Mr. Collins brought from prison to the courthouse for the hearing. A hearing was held on August 19, 2019, and in the presence of respondent and Mr. Collins the judge denied Collins' motion because it was filed out of time, without the court's approval, without an agreement of the District Attorney, and the State objected to modification. The court's minute entry notes that: "Defense counsel left without permission of the Court prior to the Court's approval of the language of his prepared court minute and therefore is not present to sign the approved minute."

¶78 The Bar presented as part of Count Three evidence concerning respondent's legal practice involving similar motions for other clients, and these motions were denied for reasons similar to the order denying relief to Collins. These cases occurred both prior to and simultaneously with respondent's representation of Collins. In 2018 in a Tillman County case, respondent's motion to modify his client's sentence was denied because the District Attorney would not agree to a modification of the sentence. In 2018 in an Atoka County case, respondent's motion to modify his client's sentence was denied because his client was not statutorily eligible for a modification, and additionally because the District Attorney would not consent to the matter being reviewed and objected to the Court considering a modification. Again, the motion to modify for Collins was filed in 2019.

¶79 The 2018 cases are cited as examples by the Bar for the purpose of showing respondent was aware, or should have been aware, of the legal requirements necessary for a successful motion of the type he was filing. In other words, he knew Collins would not qualify for a sentence modification because the District Attorney had not agreed to a modification.

¶80 In support of the Bar's allegations, an attorney currently employed by the U. S. Attorney's office in Oklahoma City testified. She was previously employed by the Oklahoma County District Attorney and in that capacity she was slightly involved with Collins' modification case and more involved with another case involving respondent.

¶81 In the Collins case, a meeting occurred with her, the Asst. D.A. assigned to Collins' case, respondent, and respondent's personal assistant. She was asked to "sign off" on a Minute Order which continued Collins' modification hearing because she was assigned to that courtroom and the other Asst. D.A. was assigned to a different courtroom. She testified the conversation at the meeting did not include a consent to a modification. She testified there "was a discussion about looking into whether or not they [the State] would agree to a modification," but there was never a moment when the assigned Asst. D.A. agreed to a modification.

¶83 This former Asst. D.A. also testified she had another modification case involving respondent where respondent did not get the State's consent to place the modification motion on a hearing docket, and respondent had no conversations with her concerning the State's consent for a modification.

¶84 In this other modification matter there was a negotiated guilty plea by Mr. Bowman and subsequently an order in 2016 denying a motion to modify, and then in 2019 respondent filed a motion to modify for Bowman. The Asst. D.A. stated respondent's motion did not cite any authority for the motion and failed to attach documentation in support. Because of insufficient documentation provided at that time by respondent, the Asst. D.A. submitted requests to D.O.C. to obtain documentation. However, no records showed completion of a D.O.C. program by Bowman, and the records showed behavioral violation reports while incarcerated. She obtained a behavioral violation report from respondent's office. She filed an objection to the modification based upon two independent grounds, the date of the plea agreement making respondent's motion untimely and the content of the records she received.

¶85 The former Asst. D.A. was asked about the handwriting in the Court Minute setting Mr. Bowman's motion for a hearing. She testified that all of it, including case, style, and language of the order setting a hearing, was the handwriting of respondent's legal/personal assistant, with the exception of the judge's signature.

¶86 She testified the minute was dated May 10, 2019, set the date for hearing four days later, and Mr. Bowman was "writted out" to attend the hearing by respondent's request. She agreed that the expense to the D.O.C. for time, labor, someone transporting Collins and guarding him to appear for a motion was approximately $500.00. She stated an additional expense was the time wasted by an Asst. D.A. to appear at a hearing and state an objection already on file when the motion requires the State's prior consent and it was never obtained. She noted additional expense occurred because of the age of Mr. Bowman's case and the necessity of retrieving his file from warehouse storage.

¶87 Respondent objected to this testimony before the trial panel, and argued it was beyond the allegations of the Second Amended Complaint because Bowman did not file a Bar grievance against respondent.

¶88 An Oklahoma lawyer testified he had practiced criminal law in Oklahoma since 1989. He had previously represented Mr. Collins in several matters during several years, and was close to Collins' family. Because Collins was not taking this lawyer's personal and legal advice he told Collins he needed to get another lawyer to represent him for the "felony DUIs that were pending against him." He testified Collins' new lawyer, not respondent, had tried a "one-year review and that was unsuccessful." He stated he visited Collins at his place of incarceration after this first unsuccessful attempt for modification. He advised Collins to take as many programs the Department of Corrections offered him, "not to have any misconducts," encourage his mother, and focus on what he would be able to show the Pardon and Parole Board as a nonviolent offender.

¶89 This lawyer and family friend stated Mrs. Collins telephoned him after his visit to her son, and told the lawyer she had hired respondent for a one-year sentence review. This family friend told her "it was a waste of time." He telephoned the Bar because Mrs. Collins "kept telling me that she was assured that Rob was about to get out, and he was going to be released, and for her to be ready." He gave her advice to call the Bar, because "I knew the only way for this to happen would be for the DA's office to agree to it, and I knew from my experience that that was not going to happen."

¶90 An additional Asst. D. A. named by respondent as having an agreement with respondent also testified before the trial panel. The Asst. D.A. testified he had never consented to a modification for Collins.

¶91 On cross-examination by respondent's counsel, this Asst. D. A. answered in the affirmative to the question "I think we all agree that you did not agree to a modification. We agree on that, don't we?"

¶92 Respondent testified he was hired "to be looking at Mr. Collins' information, there was quite a bit of information, to see if he could potentially benefit from a motion being filed and argued."

¶93 Respondent makes a distinction between an Asst. D.A. agreeing to a hearing on a modification versus agreeing to a modification of a sentence. His argument is that an Asst. D. A. agreed to a hearing on Collins' motion but not a modification, and respondent's motion for Collins was proper. The Asst. D.A. testified he did not agree to a hearing or a modification. He stated his agreement to a continuance for the hearing occurred after the hearing had been set by the judge, and the continuance could not be construed as an agreement for a hearing on a modification. Another Asst. D.A. testified that she was assigned Collins' case, and that she did not agree to a modification.

¶94 The District Attorney for Oklahoma County testified. He explained he was familiar with Collins' history of DUIs and characterized Collins "a significant public safety risk." He stated he had "no recollection" of any discussion of Collins' case with respondent. He had checked his calendars "and I didn't have anything where I had docketed Mark Bailey for an appointment and never with the client Rob Collins."

¶95 The District Attorney stated the usual practice is for a lawyer to meet with the D.A.'s Office and negotiate a modification and both sides agree to terms, and then the defense attorney will file the motion to modify "and have it set with the DA's blessing." Respondent's legal assistant testified respondent was not required to contact a D.A.'s Office to obtain an agreement to set a hearing on a motion to modify, and "we can just set a hearing prior to speaking with the district attorney."

¶96 The trial panel found respondent failed to communicate with Mrs. Collins and her son, "failed to give effective legal advice, was not candid in his communications with Mrs. Collins, the Court, the District Attorney's Office or the OBA." The trial panel found respondent filed Collins' motion to modify a sentence "without the consent of the District Attorney as required by statute."

¶97 Respondent's brief concludes concerning the Collins' grievance: "Respondent's actions did not rise to the level of an ethical violation and the Collins grievance should be dismissed."

¶98 Title 22 O.S. § 982a

¶99 The Bar's evidence is that respondent's conduct is not a simple misunderstanding concerning one case and with one Assistant. District Attorney. The evidence is clear and convincing respondent obtained a judge's signature on an order for a hearing without participation from the District Attorney's Office. Respondent testified that an Asst. D. A. agreed to a hearing on a modification for the purpose of letting the judge decide the merits of a modification, or agreed to a hearing which had the legal effect of allowing a judge decide the merits. Respondent's testimony that an Asst. D.A. agreed to a hearing for the purpose, either as a matter of fact or law, for the judge to hear the motion on the merits, is simply not credible.

¶100 The Bar's evidence is that in 2019 when he filed the motion for Collins respondent knew from his prior cases that a District Attorney's agreement was necessary for Collins' sentence modification. The Bar's evidence is that respondent's practice of law has a pattern of filing a motion to modify a sentence without a prior agreement with a District Attorney when a statute required such agreement. Respondent states he performed the written contract for research with a potential for filing a motion to modify.

¶101 The record shows respondent filed the motion to modify in Collins' cases before contacting the District Attorney's Office. Respondent's position is that if he takes a legal fee for legal research, and then files a motion to modify a sentence without discussing the matter with the District Attorney's Office, and the motion is subsequently denied because the District Attorney has not agreed to a modification; then respondent has served the interests of his client and the fault for the motion's failure lies at the feet of the District Attorney. According to the Bar, respondent continued to offer hope of success to clients while taking their money while knowing the absence of an agreement with a District Attorney would result in his clients necessarily failing to obtain judicial relief.

¶102 Mrs. Collins thought she was obtaining $5,000 worth of legal services to obtain a judicial release from prison for her son, but what she actually received from respondent was nothing more than a transient false hope created by respondent's false assurances of ultimate success in the District Court.

¶103 ORPC, Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Respondent knew an agreement with a D.A. was necessary for a sentence modification, and he knew this prior to taking $5,000 from Mrs. Collins. Respondent's argument provides a subjective standard for reasonableness based upon his subjective view his actions were not professional misconduct. For the purpose of determining "what is reasonably necessary for representation," we apply an objective standard of reasonableness to all of the circumstances. We conclude respondent was not acting reasonably when after his unsuccessful similar motions he filed Collins' motion without first obtaining (1) an agreement with the District Attorney or (2) a determination of the District Attorney's procedure for obtaining an agreement, or (3) a good-faith legal claim the District Attorney's agreement was unnecessary for a review of the motion on the merits. Respondent did not exhibit skill, or thoroughness, or preparation reasonably necessary to represent his client. Respondent violated Rule 1.1 of the Oklahoma Rules of Professional Conduct.

¶104 ORPC, Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Mrs. Collins hired respondent in January 2019, a motion to modify was filed February 2019, and originally set for a hearing in June 2019, and ultimately heard in August 2019. The Bar does not point to these dates to show a lack of promptness, but alleges respondent was tardy in responding to Mrs. Collins' efforts to obtain information. Procrastination and delay by a lawyer responding to a client is evidence of a violation of Rule 1.3.

¶105 Respondent disputes he failed to timely respond to Mrs. Collins. This allegation against respondent is also the primary basis for the Bar's allegation of a Rule 5.3 violation. ORPC, Rule 5.3 requires a lawyer to supervise the lawyer's employee and "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

¶106 The record clearly shows Mrs. Collins wanted more frequent updates for the status of her son's case. There is no record of respondent sending any written correspondence to Mrs. Collins giving case updates other than sending her the fee agreement. The record also clearly shows some communication by telephone was occurring through respondent's legal assistant. Mrs. Collins, the Bar, and respondent focus on a narrow period window of time for the allegations. Mrs. Collins sent a letter, dated May 5, 2019, to the Bar and outlined her distress caused by respondent's lack of communication. The letter states respondent's assistant telephoned her and left a message that a hearing was scheduled April 18, 2019.

¶107 On April 16th Collins received a call from respondent's legal assistant who stated the hearing had been canceled. Collins testified she had been informed the hearing was canceled for the purpose of respondent meeting the D.A. and a specific Asst. D.A. May 2, 2019, and they would determine relief for her son. The D.A. and the named Asst. D.A. testified no such meeting occurred on May 2nd for discussing Collins' case. However, respondent's answer to the grievance stated the hearing was canceled and set for a later date because "The judge believed it may be beneficial to conference with the DA to see if a negotiation could be met in lieu of a hearing." A transcript of a telephone call between the legal assistant and Mrs. Collins on May 8, 2019, includes statements from respondent's assistant that he was meeting with an Asst. D.A. that day. The Asst. D.A. testified respondent "came by and told me they were striking this -- -- this hearing."

¶108 A lawyer is "duty-bound to supervise the work done by lay personnel and stands ultimately responsible for work done by the entire nonlawyer staff," and lay personnel may not make misrepresentations concerning a lawyer's involvement in a case.

¶109 The Collins' grievance, the Bar, and respondent focus on a narrow window of time in April and May 2019. Collins understood the meeting would occur on May 2nd, and on May 3rd "she still had not received word from Mr. Bailey's office as to the outcome of the meeting. Because she had not heard the outcome of a meeting on May 2nd, on May 3rd she had begun calling respondent's office with no success in contacting someone by May 5, 2019. Respondent states Mrs. Collins was telephoned the day the motion to modify was filed in February 2019, and also informed at that time of the April date for the hearing. Respondent states a conference telephone call occurred with Mrs. Collins on May 8, 2019, and advised her of a hearing set for June 24, 2019.

¶110 Mrs. Collins attempted to send text messages from her phone to respondent's legal assistant. Testimony of Mrs. Collins states the legal assistant talked with her on more than one occasion, and all communication with respondent went through this legal assistant. However, the record is clear Mrs. Collins desired more frequent updates on her son's case. Mrs. Collins was upset she was not being provided updates and appeared at respondent's office and requested a return telephone call to give her an update on her case, and a telephone response occurred several days later. A transcript of a telephone conversation between Mrs. Collins and respondent's assistant in June 2019 shows Mrs. Collins did not know or understand at that time the events happening in the case and how they related to her litigation objective.

¶111 Rule 1.4 states a lawyer has an obligation to "keep the client reasonably informed about the status of the matter," and to "promptly comply with reasonable requests for information. The standards are "reasonably informed" and "promptly comply" to a reasonable request. We conclude the evidence is not clear and convincing respondent failed to keep Collins reasonably informed based on an objective standard or that he failed to promptly comply with requests for information as to the progress of her case through his assistant.

¶112 Respondent's legal assistant testified as a witness for respondent. She disputed the testimony of Mrs. Collins.

¶113 The Bar invoking Rule 5.3 for these facts is improper. This conduct relating to the minute order and signing respondent's fee contracts is not tied to the Collins case by evidence before the trial panel. The allegations in Count Three of the second amended complaint as they apply to the assistant all involve her communications with Mrs. Collins, and the complaint makes no allegations concerning the assistant's conduct in the Bowman case as violating the Oklahoma Rules of Professional Conduct as a pattern of conduct also shown to be present in Collins' case.

¶114 We conclude the findings and conclusions of respondent violating ORPC, Rule 5.3,and Rule 1.3 as it relates to Rule 5.3, are not supported by clear and convincing evidence.

¶115 ORPC, Rule 1.4 also requires a lawyer to provide information to permit the client to make informed decisions regarding the representation.

¶116 Respondent also argues he provided what was expressly stated in the written fee agreements Comment 3 to Rule 1.4 requires a lawyer to provide information based upon the client's objectives.proper motion to modify, and this object was inconsistent with respondent's failure to obtain a D.A.'s agreement or make a good faith claim such agreement was unnecessary. Respondent violated Rule 1.4.

¶117 ORPC, Rule 1.5 requires a lawyer's fee to be reasonable. The testimony shows respondent filed a motion which relied heavily on documents previously prepared by a different lawyer for the same type of motion, and respondent charged a $5,000 fee for a motion he knew, or should have known, would necessarily be denied and no relief afforded to his client because the respondent had failed to timely secure the necessary condition for that relief. Respondent does not credibly point to "novelty and difficulty of the questions involved, the "time and labor required," "the skill requisite to perform the legal service properly," or Collins' case precluding other employment."

¶118 Mrs. Collins paid $5,000 for a motion to modify a sentence without an agreement by the District Attorney when such agreement was required. The legal maxim caveat emptor (let the buyer beware)

¶119 ORPC, Rule 1.15(c) states: "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Collins requested a return of the $5,000 as part of her grievance. The Bar asked for an accounting of the $5,000 fee as related to respondent's legal services. Rule 1.15(d) requires a lawyer to promptly render a full accounting regarding property of a client or a third person.

¶120 On May 14, 2019, the Bar requested respondent to respond to the Collins' grievance and include monthly IOLTA Trust Account Statements. An investigator for the Bar requested a copy of the grievance and accompanying letter requesting information be sent again to respondent. Respondent's legal assistant emailed the Bar and stated no grievance had been received by respondent. On June 3, 2019, the Bar again requested respondent to respond to the Collins' grievance. Respondent did not include the monthly IOLTA Trust Account Statements, but did include a photocopy of a deposit slip showing a $5,000.00 deposit into an account bearing his name. A subpoena was issued to obtain the trust account records. He testified before the trial panel he routinely cashed checks from clients and then deposited the cash into a trust account.

¶121 Nothing in the record shows legal services provided to Collins between January 7, 2019 and January 14, 2019, when the balance in respondent's trust account was less that the payment he received from Collins. The Bar asked for respondent to provide an accounting of his legal services. He did not provide anything showing when legal services occurred in relation to diminishing funds in his trust account. Respondent's conduct violated ORPC, Rule 1.15(c) &(d).

¶122 Collins filed a grievance and also asked for a refund and the papers which had been prepared by the previous lawyer for Collins. Respondent did not provide a refund, an accounting, or provide the client's papers. Respondent violated ORPC, Rule 1.16(d).

¶123 ORPC, Rule 3.1 states a lawyer should not bring a frivolous proceeding. The rule states as follows.

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

In 1988 when this rule was adopted a Comment to the rule stated that an action is not frivolous merely because a client will not ultimately prevail. However, an action is frivolous "if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

¶124 Respondent did not respond in an appropriate and timely manner when the Bar sought an accounting of the funds in his trust account in relation to when, and the extent of, legal services were provided to Collins. Respondent violated ORPC, Rule 8.1(b).

¶125 ORPC 8.4 states a lawyer may not "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; [and] (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law."

¶126 Concerning Rule 8.4(c): The evidence is clear and convincing respondent misrepresented to Rob Collins and Mrs. Collins an agreement had been obtained with the District Attorney's Office for a hearing on the merits when in fact no such agreement had been obtained. Respondent violated Rule 8.4(c).

¶127 Concerning Rule 8.4(d): The evidence is clear and convincing respondent had a common practice of using judicial writs to bring prisoners in the custody of the Department of Corrections to court hearings which were pointless because respondent did not obtain an approval for the motions from the District Attorneys. Respondent used a judicial writ to bring Collins to his hearing on a frivolous motion and respondent caused the pointless expenditure of public funds. Respondent violated Rule 8.4(d) in Collins' case.

¶128 Concerning Rule 8.4(e): Mrs. Collins testified she was told by respondent he was "good friends and golf buddies" with a specific Asst. D.A. and a friend of the District Attorney. She testified on cross-examination she remembered respondent telling her he played golf with the DA and a specific Asst. D.A. and later stated "he did something with them. I don't know what." Mrs. Collins clearly had an impression respondent could influence the prosecutors. However, her testimony is equivocal and a violation of Rule 8.4(e) is not shown by clear and convincing evidence.

¶129 Respondent's conduct taking legal fees to file frivolous and pointless motions, and failing to properly account for legal services in relation to fees obtained, other than as a lump sum flat fee, reflect adversely upon the legal profession and the conduct violates RGDP, Rule 1.3. Respondent's failure to timely and fully respond to the Bar's requests for information violates RGDP, Rule 5.2.

¶130 We conclude concerning the evidence presented on Count Three: Respondent violated ORPC, Rules 1.1, 1.4, 1.5, 1.15(c) & (d), 1.16(d), 3.1, 8.4(c) & (d), and RGDP, Rules 1.3 and 5.2.

Count Four

¶131 Our rectitation of facts and analysis of the evidence for Count Four may be abbreviated because it follows a familiar pattern of conduct by respondent. The fee contract was mailed to Mrs. K. as directed because her husband's primary language is French and he was employed in another State. Mrs. K. emailed respondent's legal assistant because legal services for a subsequent expungement were not stated in the contract as had been orally stated by respondent when the fee was paid: "expungement is included in the price but I can't find it in the contract, I may have missed it can you help?" Respondent's legal assistant replied to the email and stated additional fees for a trial may be necessary, but her response was silent on the issue whether additional fee would be necessary for an expungement. Mrs. K. testified respondent's legal assistant telephoned her and assured her the $2,500.00 fee included legal services for the subsequent expungement process. Respondent testified his legal assistant answers his phone, opens his letters, and answers his email.

¶132 Respondent's clients sent him an email from the beginning of his representation. They stated they did not understand an ambiguity in the fee agreement they were asked to sign. Their misunderstanding was an ambiguity or conflict caused by respondent's oral statement their fee included an expungement but respondent's written form contract had no reference to the expungement. Respondent had an opportunity early in his representation to explain the ambiguity, but he remained silent on the issue and his assistant telephoned the clients with assurances. A fiduciary relationship imposes an absolute duty to fully disclose all material facts,

¶133 Mrs. K. testified she had contacted other lawyers and their fees were between $1,500 and $1,700, and she and her husband had selected respondent because respondent stated his fee included an expungement. The fee contract provided that the fees "are considered earned in full upon the signing of this contract."

¶134 Mr. K. subsequently filed a grievance because (1) he was required to fly into Oklahoma City for a hearing and respondent did not appear because he was on vacation, and (2) respondent subsequently told him his legal services for an expungement were not included in the $2,500 fee. Mr. K. subsequently retained a different lawyer to obtain his expungement.

¶135 The Bar made additional allegations concerning this grievance. The Bar sent a letter to respondent's official roster address and requested a response to the grievance. A response was not made within twenty days. A certified letter was sent to respondent, and the letter was received by another person. No response was made by respondent to this letter.

¶136 The Bar Association then emailed respondent, sent a copy of the email to respondent's counsel, and again asked for a response to Mr. K.'s grievance. A written response dated three days later stated the $2,500.00 fee did not include an expungement and respondent never agreed to assist with an expungement. Respondent stated he did not receive the two previous letters, and he did not recognize the signature on the certified mail receipt.

¶137 Respondent stated to the Oklahoma Bar Association that he responds quickly to every inquiry. However, "to avoid confusion in the future, should the need arise" that he be contacted, then he should be contacted through his named lawyer.

¶138 The trial panel found respondent violated ORPC, Rules 1.1, 1.3, 1.4, 1.5, 5.3, 8.1(b), 8.4(c)(d), and RGDP, Rules 1.3 and 5.2.

¶139 The evidence is clear and convincing the fee agreement violated Rule 1.5; respondent did not keep his client informed and violated Rule 1.4; respondent did not supervise his legal assistant properly for keeping Mr. K. reasonably informed concerning the status of proceedings and when responding to more than one inquiry if the $2,500 fee included an expungement, he violated Rule 5.3. The testimony of Mr. and Mrs. K. has more credibility than respondent and his assistant. Respondent misrepresented the scope of legal services to be included in the $2,500 fee and violated Rule 8.4(c). Respondent's failure to act diligently, Rule 1.3, is applied by the Bar to respondent's failure to provide legal services for the expungement as orally agreed. Respondent violated Rule 1.3.

¶140 A Rule 8.4(d) violation, conduct prejudicial to the administration of justice, is based upon interference which is serious and must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct."

¶141 The record is clear that respondent possesses legal knowledge and skill necessary to provide competent representation in the matter he undertook for Mr. K. and Mrs. K., as required by ORPC, Rule 1.1. The record is also clear that respondent was not giving these clients this competency, this legal knowledge and skill, when he was violating Rules 1.3, 1.4, 1.5, 5.3, 8.1(b), and 8.4(c) & (d). Respondent violated Rule 1.1.

¶142 Respondent's failure to respond appropriately to the Bar seeking information violates ORPC, Rule 8.1, and RGDP 5.2. Respondent's attempt to limit the Bar's scope of investigation and contact with respondent by channeling their requests for information through his lawyer also violates these two rules.

¶143 In summary, in Count Four respondent violated ORPC, Rules 1.1, 1.3, 1.4, 1.5, 5.3, 8.1(b), 8.4(c) & (d), and RGDP, Rules 1.3 and 5.2.

Count Five

¶144 Our rectitation of facts and analysis of the evidence for Count Five is abbreviated. Bliss entered a plea of nolo contendere in 2011 and received a sentence of thirteen years. A previous motion for sentence modification was filed and denied in 2015. A previous application for post-conviction relief was filed and denied in 2017. Ms. Hart and her fiancé, Mr. Bliss, corresponded with respondent in 2017 for the purpose of retaining his services to review an application for post-conviction relief that Bliss had prepared for filing in Cleveland County. Bliss received a letter from respondent, and respondent agreed to review the application for a fee of $2,500. Hart paid respondent $3,500.00 on October 29, 2018. Bliss testified he had no idea why respondent increased the price for the review.

¶145 Bliss testified that in a phone conversation with respondent's legal assistant Bliss was told respondent knew the judge and that he would be home by Christmas that year. Hart was told by respondent's legal assistant that a motion for sentence modification would be filed, and Hart relayed that information to Bliss. However, Bliss was not pleased a motion for sentence modification would be filed because "I wasn't even eligible for it." Bliss wanted respondent to assist him with an application for post-conviction relief. Bliss asked Hart to retrieve his materials from respondent. Respondent's office was asked to return the material, but it did not occur.

¶146 Bliss received notice from the Cleveland County court clerk that a motion for sentence modification was filed in 2019. Bliss had not been informed the motion had been filed on his behalf. Bliss sent a letter to respondent and requested information about this motion. An affidavit in support of a writ of habeas corpus ad prosequendum with respondent's signature was filed, and the judge denied the requested writ, struck the hearing, and denied the motion for a sentence modification because it was outside of a statutory time limit for such motions.

¶147 Bliss received notice from his case manager the motion for sentence modification had been denied without a hearing. A call log from the Department of Corrections showed twelve telephone calls from Bliss that respondent's office would not accept. A telephone call was accepted after the motion was denied, and respondent told Bliss the denial was because "they don't like you down there." Bliss testified that respondent told him that he would check out options with the Pardon and Parole Board, but Bliss knew of no subsequent efforts by respondent with the Board.

¶148 Bliss sent a letter to respondent demanding a refund and return of his materials. Respondent did not respond with a refund, or an accounting, or a return of the materials. During the trial panel hearing Bliss was reminded that the trial panel had already heard a record of his phone conversations, and he was asked to explain the conversations with respondent and respondent's legal assistant. Bliss phoned respondent's legal assistant and asked her why the motion for sentence modification had been filed. She stated she met with the judge and related the judge was threatening to file additional charges against him. She stated this was based upon Bliss contacting the judge and his staff. Bliss testified he had not contacted the judge or his staff. Bliss filed a grievance with the Bar, and has been released from prison.

¶149 An Asst. D.A. for Cleveland County testified.

¶150 On cross-examination she explained respondent should have talked to her before filing the motion, because without the prosecutor's agreement "there was no legal reason to file it." She also explained a sentence may be modified with an application for post-conviction relief in some circumstances. She testified Bliss had previously complained concerning some of the officials in Cleveland County.

¶151 Respondent was asked whether the Asst. D.A. should have been contacted for her agreement on filing the motion to modify a sentence, and whether the requirement was "a matter of law or is it a matter of etiquette." He responded: "Both. More so etiquette."

¶152 The fee contract had language stating the fee was "considered earned in full as specifically stated in this contract." The contract also had language stating the fee was "due in full upon signing this contract," but the contract does not expressly state the fees are deemed or considered earned upon signing the contract.

¶153 The Bar sent a letter to respondent asking for a response to the grievance within twenty days. Respondent did not respond. The Bar sent a certified letter to respondent requesting an immediate response. The Bar sent an email to respondent and a copy to respondent's counsel. Respondent submitted a response and reminded the Bar he had previously requested that "all correspondence from the Bar Association be sent to my Counsel." He stated the records for Bliss needing review were numerous and lengthy, and "There were multiple motions filed with the Cleveland County Courthouse on Mr. Bliss' behalf, as well as an Affidavit for Writ of Habeas Corpus Ad Prosequendum." In other words, he stated he earned his fee and he did not violate any rule of professional conduct.

¶154 The trial panel found respondent violated ORPC, Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), 3.1, 5.3, 8.1(b), 8.4(d) & (e), and RGDP, Rules 1.3 and 5.2.

¶155 When respondent responded to the grievance he justified his fee by pointing to his assertion he reviewed numerous documents and his filings in Cleveland County. When he was before the trial panel he asserted he should not have filed the motions to modify a sentence, but his fee was earned by his review of documents for a post-conviction application. However, he stated he has no idea how much time he spent on this task.

¶156 Again, when discussing a reasonable fee for the purpose of ORPC, Rule 1.5, we have examined eight factors. Baby Boy A, supra. Respondent did not try to defend the amount of his fee by applying these factors to the fee he charged Bliss. He could not give an accounting of his time because he simply did not know how much time he spent. He asserts he earned the fee with an ipse dixit statement:

¶157 Generally, these eight factors are used in the context of a fee when the contract and lawyer's conduct is unaffected by either a contrary public policy or the professional misconduct by the lawyer.unearned fees to be refunded.

¶158 A comparison of respondent's testimony and his counsel's closing statement shows no clear and unequivocal position that the amount of the fee was justified by respondent based upon his post-conviction research by itself (the client's objective), or if he combined this research with a motion for sentence modification which respondent also agreed should not have been filed. No testimony contradicts respondent's testimony that he performed post-conviction research for Bliss. Respondent did not discuss a typical fee for post-conviction research or a typical fee for the particular post-conviction research he performed. The Bar's assertion of a Rule 1.5 violation is based upon respondent indicating he did not use the eight-factor test and exercise a proper professional discretion when determining the amount of the fee, e.g., he had no idea how much time he spent on the post-conviction research. The ORPC, Rule 1.5 violation has been shown by the Bar.

¶159 The Bar has not shown a particular fee was unearned, but the evidence is clear and convincing respondent did not return materials belong to Bliss, (ORPC, Rule 1.16(d) violation), failed to keep Bliss informed and respond to requests for information (ORPC Rules 1.4 and 1.3 violations), failed to supervise his legal assistant who made a statement of respondent's ability to influence a judge(ORPC, Rules 5.3 and 8.3(e) violations), and filed a frivolous and pointless motion and affidavit for a writ in District Court (ORPC, Rules 1.1, 3.1, and 8.4(d) violations). Respondent's lack of proper and timely responses to the Bar's requests for information and accounting shows violations of ORPC, Rule 8.1(b) and RGDP, Rules 1.3 and 5.2.

¶160 In summary, we conclude in Count Five respondent violated ORPC, Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), 3.1, 5.3, 8.1(b), 8.4(d) & (e), and RGDP, Rules 1.3 and 5.2.

Count Six

¶161 A Bar grievance was filed and stated respondent was retained to remove Mr. C. from a sex offender registry involving a 1998 case. Respondent was paid a flat fee of $2,500 on June 26, 2017. The contract stated the fees were "due and earned upon signing the contract." The contract states its purpose: "Sex Offender Registration Removal Efforts." Respondent testified he performed "efforts" which was largely legal research, an alleged forty-seven phone calls, and a proposed and unfiled two-page motion. This statement expanded on his initial response to the Bar which identified the $2500 fee as payment for legal research.

¶162 The grievance was made in September 2019, and stated Mr. C. had paid respondent in June 2017, and "I have not heard anything," "I cannot get in touch with him by phone," and Mr. C. wanted his funds returned.

¶163 On November 26, 2019, the Bar sent a letter by certified mail requesting a response to the grievance from respondent. On December 16, 2019 the Bar sent another certified letter to respondent requesting a response. On December 17, 2019, the Bar sent an email to respondent's counsel and stated respondent was not responding to the Bar's letters.

¶164 Respondent sent a response to the Bar dated December 28, 2019. He stated he had communicated with Mr. C., and respondent told him he should wait until a pending case was litigated before seeking to be removed from the registry.

¶165 Respondent was asked at the hearing if Mr. C. was eligible to be removed from the sex offender registry since he is an aggravated offender with a lifetime registration requirement. Respondent stated Mr. C. was not eligible pursuant to current law, but a case was in the process of being litigated and the result could change the law. Respondent stated he prepared a motion to remove Mr. C. from the registry, but the motion was not filed because it would have been denied. Respondent stated he did not return any funds to Mr. C.

¶167 The trial panel found respondent violated ORPC, Rules 1.3, 1.4, 1.5, 8.1(b), and RGDP, Rules 1.3 and 5.2.

¶168 The Bar sent letters requesting respondent to respond to a grievance. An initial letter sent by the Bar to respondent stated rules of professional conduct allegedly violated. The letter alleged he violated Rule 1.5 requiring fees be reasonable.

¶169 The contract states the fees were earned upon signing the contract, but the response from respondent states after payment of the fee respondent "began researching his case." The $2500 payment was for future legal services. The contract violated ORPC, Rule 1.5. Further, respondent's assertion he would not construe the contract as an improper retainer does not ameliorate his view that, as with other grievances, he is not required to use the eight-factor test when he determines the amount of his fee, and he may properly assert the fee was earned without any indication how the amount of this fee was determined for the legal research provided. Respondent violated Rule 1.5.

¶170 Respondent's response to the Bar's requests to respond was untimely as well as failing to properly address the alleged violations raised by the Bar. Respondent blamed the U.S. Post Office for not delivering his certified mail. Respondent violated ORPC, Rule 8.1(b), and RGDP, Rules 1.3 and 5.2.

¶171 Respondent asserted someone in his office communicated with a specific Department of Corrections employee concerning Mr. C. and his removal from the registry. This specific employee who handles Sex Offender Registry cases stated she had no recollection or documentation of speaking with respondent or anyone from his office. The Bar requested documents supporting respondent's assertion of forty-seven telephone calls on behalf of Mr. C., but supporting documentation was not provided. Respondent violated Rule 1.4.

¶172 Mr. C. complained to the Bar that respondent was hired in 2017 and more than two years later in 2019 respondent had not performed what Mr. C. thought respondent had been hired to perform. Respondent asserted in his response to the grievance that he had begun research shortly after being paid. Respondent did not produce any documentation such as a letter sent to Mr. C. at any time during those two years with an update: No letter stating the matter was still being researched, or an update on research billed towards the fee, or revealing information obtained from any of the forty-seven telephone calls, or giving an update on the substance of the research, or a recommendation upon conclusion of the research. Mr. C. complained his calls were not returned and he did not know what respondent was accomplishing for the fee which had been paid. Delay by a lawyer responding to a client is evidence of a violation of Rule 1.3. Respondent violated ORPC, Rule 1.3.

¶173 In summary, we conclude in Count Six respondent violated ORPC, Rules 1.3, 1.4, 1.5, 8.1(b), and RGDP, Rules 1.3 and 5.2.

Count Seven

¶174 K. Owens testified about her grievance at the hearing. She had previously worked part time as a server at a restaurant which had a bar. Police arrived because there was a room in the restaurant which had slot machines. Her money and cell phone were seized by the police, and she stayed overnight in jail. Respondent had been recommended to her and after being released the next day she went to see respondent along with her mother, daughter, and sister. She hired respondent by paying $2,500 from her funds with an additional $2,500 she paid the next day after she borrowed it from her sister. The payments were in cash to respondent's legal assistant and she did not receive receipts.

¶175 The written contract states it is for the purpose of "ABLE Commission Obstruction Charges."

¶176 Owens was called to testify before a grand jury. She testified for less than an hour accompanied by respondent. Her understanding from talking with an Asst. Attorney General at the hearing was that everything they were going to use from her phone had already been downloaded. She was told by respondent he had asked for return of her phone and cash. Owens was not subsequently charged with a crime, and she was not subsequently listed as a witness for either the State or the person who was charged. She immediately started asking respondent to retrieve her property.

¶177 Owens regularly communicated with respondent and his legal assistant during 2018 to July 2020 for the return of her property. Respondent told Owens to communicate with his assistant on the issue of retrieving her property. Owens kept screen shots of the texts she sent to and received from respondent's legal assistant. She used an old phone belonging to her child. She provided the screen shots to the Bar. Responses from respondent and his staff stated they had made telephone calls, visits to offices, and sent emails and letters for the return of her property, but delay was caused by a police department, a court, and prosecutors. Evidence at trial indicated these efforts had not occurred as represented.

¶178 In July of 2020, Owens filed a grievance stating she had retained respondent more than two years earlier to retrieve her phone and cash seized by the police, "but now they have stopped all communication." The Bar sent a letter to respondent on July 28, 2020, and requested a response to the grievance filed by Owens. The Bar sent an email to respondent's lawyer with an attached copy of the letter sent to respondent. Respondent filed a response to the grievance with the Bar on August 17, 2020.

¶179 On July 31, 2020, Owens sent an email to an investigator for the Bar, and stated respondent's legal assistant contacted Owens and told her: an employee of the police department "gives his word my stuff will be handed back to me as soon as the trial is over which is set for September 14th . . . and she will get back to me around September 20th and we could go and get my stuff back from the DA."

¶180 Respondent's legal assistant asked Owens to sign a statement she was satisfied with respondent's representation. She replied, "no," because she had not received her phone or her cash, and respondent had not earned the $5,000 she had paid him. Owens testified she never received a copy of a demand letter respondent was supposed to have sent for the return of her property. Owens terminated the attorney-client relationship.

¶181 Respondent's legal assistant informed Owens the fee was a flat fee and was for the purpose of legal services associated with a criminal investigation and criminal charges. When Owens was asked on cross-examination to notice the title of the contract: "Criminal Case Retainer Agreement," and if it was fair to require the respondent to do more than work on a criminal case, she responded "I expected him to do what he stated to do."

¶182 An investigator for the Bar Association helped Owens get her cell phone; and she said, "I got it back very quickly from him."

¶183 The trial panel found respondent violated ORPC, Rules 1.1, 1.3, 1.4. 1.5, 1.16(d) 8.1(b), 8.4(c), and RGDP, Rule 1.3.

¶184 Respondent's response to the grievance stated Owens paid $4,000 and not $5,000. The face of the fee contract initialed by his assistant states $2,000 was paid with an additional $3,000 to be paid within a week. The response also mentions certain individuals who were contacted on behalf of Owens.

¶185 Respondent stated "Owens hired me to defend her against the previously listed criminal offenses." Respondent testified he was hired for the ABLE Commission charges, and not for the return of her property. Respondent was asked in the hearing if he was "obligated to . . .get her phone and her money back" and responded he was obligated "on these ABLE Commission charges," and "our agreement" did not include getting the property back.i.e., respondent did not consider his oral representations to clients as creating an attorney-client obligation when a written agreement existed.

¶186 Several courts have stated an attorney-client relationship and obligations created thereby may be created by a written agreement, an oral agreement, or the conduct of the parties.

¶187 The fee contract violated ORPC, Rule 1.5. No accounting for the advance payment of the fee was provided when the attorney-client relationship was terminated, and respondent violated Rule 1.16(d). Respondent and his legal assistant made misrepresentations concerning the status of efforts for the return of Owens' property; respondent failed to disclose facts relating to a proper accounting concerning the fee, failed to provide competent representation, improperly delayed informing Owens concerning the status of efforts respondent agreed to perform; and respondent violated ORPC, Rules 1.1, 1.3, 1.4. 8.1(b), 8.4(c), and RGDP, Rule 1.3.

¶188 In summary: we conclude in Count Seven respondent violated ORPC, Rules 1.1, 1.3, 1.4. 1.5, 1.16(d) 8.1(b), 8.4(c), and RGDP, Rule 1.3.

Count Eight

¶189 The allegations in Count Eight are unlike those in the rest of the Bar's complaint. They involve respondent's behavior toward previous employees. The testimony in support of the allegations include: respondent carrying a firearm in his office when the lease prohibited the practice, displaying a firearm in a manner perceived as intimidating and threatening to office staff, respondent leaving his office and searching for an employee who had resigned out of fear of respondent and who was afraid to go home because of respondent's behavior, a comment to one of his employees concerning her potential appearance as a witness against him in a criminal case, and a student-employee seeking advice and assistance from a Law School Dean and another university official for a method of safely extricating herself from respondent's employment and without damaging her academic standing. Testimony used to support these allegations included, but was not limited to, the former employees as well as a former Oklahoma lawyer, not a former employee, who no longer resided in Oklahoma, but who was aware of specific controversies in respondent's office. This witness also stated respondent was an "excellent trial lawyer."

¶190 Respondent filed a Character Complaint against a former employee with the Oklahoma Board of Bar Examiners (OBBE) in retaliation for her resigning her employment. This employee was notified by the Board after she completed the exam, she filed a written response, and respondent's complaint to the Board was dismissed without further action.

¶191 The trial panel stated "the actions of the Respondent show a disregard for the law, abusive behavior toward staff, lack of candor with the OBBE and the OBA." The trial panel found the evidence in Count Eight established violations of ORPC, Rules 3.4, 8.4(b) and (d), and RGDP, Rule 1.3. We agree.

IV. Respondent's Witnesses

¶192 Respondent called four witnesses: (1) an Oklahoma County District Judge, (2) a licensed clinical social worker who teaches anger management classes, (3) a lawyer who represented respondent in his criminal cases discussed in Count One, and (4) a lawyer who is a neighbor of respondent and also worked with respondent.

¶193 The district judge stated she could not imagine the respondent making assertions of expected success to a client when the motion to modify a sentence was not yet adjudicated. She also stated her experience included mothers of defendants who sometimes hear what they want to hear. The clinical social worker testified concerning the respondent's progress. Respondent's former lawyer was critical of the law enforcement investigation of events discussed in Count One. Respondent's neighbor, a lawyer who had worked on cases with respondent, testified respondent was honest with his clients.

¶194 The judge and two lawyers testified respondent was a very good lawyer. This same opinion of respondent was stated by his former employees who explained they learned many things about the law while working for respondent, but respondent's behavior gave them reasons to be concerned.

V. Mitigation, Discipline, and Costs

¶195 Mitigating circumstances may be considered in the process of assessing the appropriate quantum of discipline.

¶196 We recently stated in State ex rel. Oklahoma Bar Association v. Fields, 2021 OK 34489 P.3d 1016Id. 2021 OK 34Fields the respondent unsuccessfully invoked anxiety as a mitigation factor.

¶197 Raising issues such as anxiety and stress require proof of the causal relationship between the act of misconduct and the mental state. While respondent's conduct in Count One and Count Eight could be viewed by some as emotional outbursts, or "losing his temper," or lack of self-control in certain situations with possibility of causation in a general sense, there remains no proof on the issue of a specific causation mechanism linking the states to an event of respondent's misconduct.

¶198 Invoking diabetes as a cause which resulted in a soiled checkbook simply does not answer the question why respondent would use that soiled checkbook to still write checks to anyone. Respondent's reply was that he was in a hurry to meet a deadline for the Bar's counsel to receive the refund check, but its odorous and stained appearance contradicts any assertion the check was professional.

¶199 Apart from Counts One and Eight, there are serious issues with respondent's practice which appear to still be unappreciated by respondent. In his post-hearing brief he states no misconduct occurred. He also states, but if the Court finds misconduct occurred, then the appropriate discipline is a private or public reprimand.

¶200 Throughout the process of several grievances the Bar has explained to respondent that if he wants to charge a flat fee for future services, then he must have a method for determining how his services are billed against the flat fee. This is necessary to distinguish how unearned fees become earned fees over time as the process of delivering the legal services occurs. Respondent should not charge a fee for filing or prosecuting a motion which will necessarily fail because respondent did not first obtain a statutorily required condition precedent for the motion.

¶201 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct, but discipline must be decided on a case-by-case basis.State ex rel. Oklahoma Bar Association v. Parker, 2015 OK 65359 P.3d 184State ex rel. Oklahoma Bar Association v. Rowe, 2012 OK 88288 P.3d 535State ex rel. Oklahoma Bar Association v. Burton, 2021 OK 9482 P.3d 739Parker and Rowe. Respondent's case does not mirror every misconduct as in Parker and Rowe, but respondent has misconduct not present in those two cases. The proper discipline is to disbar respondent.

¶202 The Bar filed an application to assess costs in the amount of $24,797.81. Respondent has not filed a response to the motion. RGDP, Rule 6.16 provides the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court.

VI. Conclusion

¶203 Respondent's challenges to the second amended complaint are denied. The Bar presented clear and convincing evidence respondent violated several rules of the Oklahoma Rules of Professional Conduct as well as Rules Governing Disciplinary Proceedings.

¶204 It is hereby ordered and decreed that respondent MARK KENDALL BAILEY be disbarred and his name stricken from the roll of attorneys. Respondent is ordered to pay costs of the proceedings in the sum of $24,797.81.

¶205 ALL JUSTICES CONCUR.

FOOTNOTES

State ex el. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551State ex rel. Okla. Bar Ass'n v. Pacenza, 2006 OK 23136 P.3d 616In re Reinstatement of Arnett, 2022 OK 87520 P.3d 840

State ex rel. Okla. Bar Ass'n v. Dunivan, 2018 OK 101432 P.3d 1056State ex rel. Okla. Bar Ass'n v. Wilcox, 2014 OK 1318 P.3d 1114Tweedy v. Okla. Bar Ass'n, 1981 OK 12624 P.2d 1049

State ex rel. Okla. Bar Ass'n v. Knight, 2015 OK 59359 P.3d 1122

State ex rel. Okla. Bar Ass'n v. Pistotnik, 2020 OK 93477 P.3d 376State ex rel. Okla. Bar Ass'n v. Gassaway, 2008 OK 60196 P.3d 495cf. State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21324 P.3d 1244

2011 OK 84264 P.3d 11971996 OK 38919 P.2d 1114

See also State ex rel. Okla. Bar Ass'n v. Eakin, 1995 OK 106914 P.2d 644cf. Massengale v. Okla. Bd. of Examiners in Optometry, 2001 OK 5529 P.3d 558

State ex rel. Okla. Bar Ass'n v. Scott, 2022 OK 1502 P.3d 1101State ex rel. Okla. Bar Ass'n v. Miller, 2020 OK 4461 P.3d 187In re C. G., 1981 OK 131637 P.2d 66

2009 OK 39213 P.3d 570

See, e.g., State ex rel. Okla. Bar Ass'n v. Miller, 2013 OK 49309 P.3d 108State ex rel Okla. Bar Ass'n v. Gassaway, 2008 OK 60196 P.3d 495

See, e.g., Weldon v. Dunn, 1998 OK 80962 P.2d 1273Hunter v. Echols, 1991 OK 114820 P.2d 450

1988 OK 56755 P.2d 6641988 OK 65757 P.2d 8251990 OK 102804 P.2d 1120

filed answer to the second amended complaint in this Court does not respond to the numbered paragraphs of new material in the Bar's second amended complaint, but instead addresses a previous version of the Bar's complaint.

12 O.S. § 2015

State ex rel. Okla. Bar Ass'n v. Mothershed, 2011 OK 84State ex rel. Okla. Bar Ass'n v. Eakin, 1995 OK 106914 P.2d 644State ex rel. Okla. Bar Ass'n v. Mansfield, 2015 OK 22350 P.3d 108

State ex rel. Okla. Bar Ass'n v. O'Neal, 1993 OK 61852 P.2d 713

State ex rel. Okla. Bar Ass'n v. Downes, 2005 OK 33121 P.3d 1058

Tucker v. Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112341 P.3d 673

See, e.g., Brooks v. Baltz, 2000 OK 7312 P.3d 467Ynclan v. Woodward, 2010 OK 29237 P.3d 145Weeks v. Wedgewood Village, Inc., 1976 OK 72554 P.2d 780cf. Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (in the context of a party's failure to object to a report and recommendation of a magistrate and subsequent loss of a right to appeal, the Court observed that procedural due process is not violated when a state terminates a claim for a party's failure to comply with a reasonable procedural or evidentiary rule).

See, e.g., State ex rel. Dabney v. Ledbetter, 1932 OK 2299 P.2d 728Johnson v. Bd. of Governors of Registered Dentists of State of Okla., 1996 OK 41913 P.2d 1339Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820-22, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (while most disqualification matters are not sufficient for imposing a due process constitutional requirement, due process is violated when the judge has a "direct, personal, substantial, pecuniary interest" in the adjudication of the case before the judge). Compare with Rollins v. Thermodyne Indus., Inc., 1996 OK 6910 P.2d 1030

Shawareb v. SSM Health Care of Okla., Inc., 2020 OK 92480 P.3d 894see also Henry v. Corp. Com'n of State of Okla., 1990 OK 104825 P.2d 1262

See, e.g., Deck v. Missouri, 544 U.S. 622, 633, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (principle applied to needless and visible shackling of capital defendant at trial); In re K.H., 2021 OK 33507 P.3d 647

Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41119 P.3d 192B & M Intern'l Trading Co. v. Woodie Ayers Chevrolet, Inc., 1988 OK 133765 P.2d 782Skinner v. Scott, 1911 OK 282118 P. 394Van Antwerp v. Schultz, 1950 OK 102217 P.2d 1034see also Samuel L. Bray, The System of Equitable Remedies, 63 UCLA L. Rev. 530, 581-582 (2016) (Laches may be viewed as a equitable constraint on a court's use of an equitable remedy when plaintiff's claim is brought with unreasonable delay.)

State ex rel. Okla. Bar Ass'n v. Hyde, 2017 OK 59397 P.3d 1286State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551In re Evinger, 1979 OK 127604 P.2d 844

Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41119 P.3d 192

Smith v. Baptist Found. of Okla., 2002 OK 5750 P.3d 1132State of Kansas v. State of Colo., 514 U.S. 673, 687, 115 S. Ct. 1733, 131 L. Ed.2d 759 (1995) (A party asserting the defense must prove (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.); Osage Nation v. Bd. of Cty. Comm'rs of Osage Cty., 2017 OK 34394 P.3d 1224

Sears v. State Dept. of Wildlife Conservation, 1976 OK 56549 P.2d 1211

Smith v. Baptist Found. of Okla., 2002 OK 5750 P.3d 1132In re Guardianship of Stanfield, 2012 OK 8276 P.3d 989Hedges v. Hedges, 2002 OK 9266 P.3d 364

State ex rel. Okla. Bar Ass'n v. Hornung, 1991 OK 56813 P.2d 1041State ex rel. Okla. Bar Ass'n v. Warzyn, 1981 OK 23624 P.2d 1068State ex rel. Okla. Bar Ass'n v. Mason, 1963 OK 89380 P.2d 961

State ex rel. Okla. Bar Ass'n v. Demopolos, 2015 OK 50352 P.3d 1210

See, e.g., State ex rel. Okla. Bar Ass'n v. Watkins, 2019 OK 76461 P.3d 174Colton v. Huntleigh USA Corp., 2005 OK 46121 P.3d 1070

See, e.g., (1) OUJI-CR 4-26, Assault and Battery - Elements, 2018 Supp., and based upon 21 O.S. 2011 §§ 641-42; and (2) OUJI-CR 4-12; and (3) The elements for an assault defined at OUJI-CR 4-25.

Oliver v. State, 2022 OK 15516 P.3d 699Harris v. State, 2007 OK CR 28164 P.3d 1103

Frederick v. State, 2001 OK CR 3437 P.3d 908In re Vose, 2017 OK 3390 P.3d 238In re Petition No. 397, State Question No. 767, 2014 OK 23326 P.3d 496

e.g., an evidence test, or elements test, or pleading test, or some other test; but merely a reference to the necessity of the Bar to present evidence in support of its allegation of criminal conduct. See, e.g., Okla. Bar Ass'n v. Watkins, supra note 32; Caleb A. Harlin, To Be 'Lesser Related or Not To Be, That is the Question - An Exploration of the 'Lesser Related' Crimes Doctrine, 94 O.B.J. No. 3, 18-23 (March 2023) (discussing the concept of lesser related offenses).

See, e.g., Brink v. State, 2021 OK CR 1481 P.3d 126721 O.S. § 64521 O.S. § 652

Id., vol. 3, 569-70.

Id., vol. III, 579, March 9, 2022.

Id., vol. 1, No. 39.

Id.

Id., vol. 9, 2079.

Id., vol. IX, 2082-83.

Id. vol. 1, No. 40, pg. 2.

Id. vol. 1, No. 41, pg.3.

Id., vol. 3, 658.

Id., vol. 4, 742.

See, e.g., United States v. Shelton, 431 F.Supp.2d 675, 676 (E.D. Tex. 2006) ("Dysentery, hepatitis, HIV, and a host of other infectious diseases can be transferred by feces and urine.").

See, e.g., 21 O.S. § 650.9

Id., vol. 3, 598.

McQueen, 2008 OK 66

Id.

2008 OK 66

State ex rel. Okla. Bar Ass'n v. Weigel, 2014 OK 4321 P.3d 168

Id., vol. VIII, 1982.

2010 OK 391980 OK 120615 P.2d 291

Baby Boy A, 2010 OK 39

2014 OK 4

2021 OK 21

Weigel, 2014 OK 4

Id.

See, e.g., State ex rel. Okla. Bar Ass'n v. Willis, 2022 OK 15

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Id.

Id., vol. II, No. 70.

Id., vol. 4, 890.

Id., vol. 4, 906-08.

habeas corpus ad prosequendum used to bring him to court, when Bowman's plea in the criminal case occurred, and the lack of consent by the State to the motion.

State ex rel. Okla. Bar Ass'n v. Willis, 2022 OK 15State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 2623 P.3d 268

Id., vol. 4, 965.

Id., vol. 4, 987.

Id., vol. 9, 2100-01.

Id., vol. 9, 2101.

Id., vol. IV, 992-3.

Id., vol. 4, 927.

Id., 8-9.

State ex rel. Okla. Bar Ass'n v. Scott, 2022 OK1, ¶18, 502 P.3d 1101

State ex rel. Okla. Bar Ass'n v. Martin, 2010 OK 66240 P.3d 690

Id., vol. 8, 1924.

State ex rel. Okla. Bar Ass'n v. Jack, 2021 OK 1481 P.3d 261

supra note 93.

2007 OK 22171 P.3d 780

supra at ¶53.

Bowman v. Presley, 2009 OK 48212 P.3d 1210caveat emptor as "let the buyer beware").

Application of Mailath, 1988 OK 19752 P.2d 803

McQueen, Rains, & Tresch, LLP, supra, 2008 OK 66

Hays v. Ellrich, 471 Mass. 592, 605, 31 N.E.3d 1064, 1075, (quoting Doe v. Harbor Sch., Inc., 446 Mass. 245, 255, 843 N.E.2d 1058, 1066 (2006)).

See, e.g., 5 O.S.2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 3.1 (Comment 2); Oklahoma Rules of Professional Conduct, Rule 3.1, published in 59 O.B.J. No. 26B (June 25, 1988) (same quoted language).

State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 2623 P.3d 268

State ex rel. Okla. Bar Ass'n v. Godlove, 2013 OK 38318 P.3d 1086

Croslin v. Enerlex, 2013 OK 34308 P.3d 1041

McQueen, Rains, & Tresch, LLP, 2008 OK 66

2015 OK 22350 P.3d 108

Id., vol. 9, 2186-87.

Black's Law Dictionary, 961 (4th ed. 1951) (ipse dixit, "He himself said it; a bare assertion resting on the authority of an individual.").

McQueen, Rains, & Tresch, LLP, 2008 OK 66195 P.3d 35State ex rel. Okla. Bar Ass'n v. Weigel, 2014 OK 4321 P.3d 168Tucker v. The Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112341 P.3d 673

See, e.g., People v. Fry, 501 P.3d 846 (Colo. O.P.D.J. 2021) (unreasonable fee provision of Colorado's rules of professional conduct (Colo. RPC 1.5) was violated by a lawyer's fee for preparing documents to file and they were never filed).

See, e.g., State ex rel. Okla. Bar Ass'n v. Willis, 2022 OK15, ¶19, 504 P.3d 1141, 1149 (Respondent's failure to refund any unearned retainers violates Rule 1.16(d) which requires a lawyer to refund any advance payment of fee or expenses that has not been earned or incurred).

Id., vol. 4, No. 175.

See, e.g., In re Berl, 540 A.2d 410, 414 (Del.Super.Ct. 1988) (a lawyer-client relationship may be found by inference drawn from the conduct of the parties, and whether a lawyer-client relationship arises depends on the facts, circumstances, and findings in a particular case); Huddleston v. State, 259 Ga. 45, 376 S.E.2d 683, 684 (1989) (relationship of attorney-client may be expressly created by written contract, or may be inferred from the conduct of the parties); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 536 N.E.2d 344, 348, cert. denied, 493 U.S. 894, 110 S.Ct. 242 107 L.Ed.2d 192 (1989); (existence of an attorney-client relationship is a question to be resolved by the trier of fact, and relationship can be implied from the conduct of the parties and need not be expressed).

State ex rel. Okla. Bar Ass'n v. Helton, 2017 OK 31394 P.3d 227

1997 OK 39936 P.2d 947

State ex rel. Okla. Bar Ass'n v. Latimer, 2011 OK 78262 P.3d 757

See, e.g., Nelson v. Enid Med. Assocs., Inc., 2016 OK 69376 P.3d 212

State ex rel. Okla. Bar Ass'n v. Grayson, 2021 OK 58499 P.3d 751

State ex rel. Okla. Bar Ass'n v. Knight, 2015 OK 59359 P.3d 1122